STEIN, Appellant, vs. BENEDICT and others, Respondents.

*November 18 — December 6, 1892.*

*Injunction: Restraining enforcement of judgment: Principal and surety: Partnership: Accounting: Pleading: Practice.*

1. The collection or enforcement of a judgment rendered in the circuit court will not be restrained in a second action brought for that purpose. The proper proceeding is by a petition in the original action.
2. An objection in such second action to the jurisdiction of the court, raised by the demurrer of an indispensable party defendant, is sufficient to defeat the action.
3. A formal demurrer is not waived by a demurrer *ore tenus*, especially if it presented any question which could not be raised by the latter.
4. Upon the dissolution of a firm, one partner retired and the other formed a new partnership with a third person. The new firm agreed to save the retiring partner harmless from all claims then existing, or which might accrue by reason of anything then exist-

Stein vs. Benedict and others.

ing, against the old firm. At this time the old firm owned certain land, subject to a note and mortgage, the note being the personal obligation of one K. for which the firm was not liable. About a week after the execution of said agreement the members of the old firm executed their joint note in lieu of the note of K., and secured it by a mortgage of said land. *Held* that, as they did not become liable for the indebtedness on the note until after the dissolution of the old firm and the execution of the agreement above mentioned, there is nothing to show that the new firm was primarily liable for the note and that the retiring partner was liable thereon merely as a surety. A general averment that the retiring partner was merely a surety is of no avail, being inconsistent with the facts specially alleged.

5. By the terms of said agreement, which was under seal, the new firm took the outstanding accounts due to the old firm, and was to collect the same and apply the proceeds to the payment of the debts of the old firm and pay over the balance to the members of the old firm. The affairs of the old firm were settled and adjusted except as to such accounts and as to the land above mentioned. *Held,* that the liability of the partner who entered the new firm to account to the retiring partner was merged in said agreement, and that in respect to the matters embraced therein the remedy of the retiring partner for any delinquency of the new firm was by an action at law on the agreement.

6. In an action for an accounting, a complaint alleging that defendants had refused to allow plaintiff to examine the books containing the accounts of the transactions in question, and that they had dealt unfairly in the matter, but not specifically alleging any wrongdoing, or that plaintiff had ever asked defendants to account, or that they had refused or denied their liability to do so,— is *held* insufficient.

7. A judgment defendant cannot have the enforcement of the judgment restrained on grounds which were available to him as a defense in the action in which it was rendered, unless he shows that his failure to set them up in that action was the result of accident, fraud, or mistake, unmixed with negligence on his part.

8. A surety cannot have the enforcement of a judgment against him and his solvent principal restrained on the ground of the latter's primary liability, since he has an adequate legal remedy by paying the debt and suing the principal for reimbursement.

9. Upon a demurrer *ore tenus* to a complaint clearly intended as a complaint in equity, the defendant may avail himself of the objection that the plaintiff has an adequate remedy at law.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiff, *Stein*, brought this action against *Henry Benedict*, *Charles H. Bellack*, Philip Stein, and *James M. Pereles* and *Thomas J. Pereles*, trustees of the estate of William E. Lamberton, deceased, and *Michael Walsh*, sheriff, etc., defendants; and his complaint is, in substance, that the defendants *Benedict* and Stein were copartners with him as merchants, under an agreement that Philip Stein should be special partnèr, and contribute $25,000, *Henry Benedict* the sum of $35,000, and the plaintiff $25,000, profits to be divided, one half to *Benedict*, one fourth to Philip Stein, and one fourth to the plaintiff; Philip Stein having been guarantied by his copartners the sum of $2,500 per annum, net profits, and the return of his entire original contribution; the losses of the business to be borne, five eighths by the defendant *Benedict*, and three eighths by the plaintiff. November 30, 1887, the plaintiff and defendant Philip Stein, of the one part, and the defendants *Benedict* and *Bellack*, of the other part, entered into an agreement resulting in the purchase by *Benedict* and *Bellack* of the merchandise, furniture, fixtures, business, and good will of the firm of Benedict & Co., for the sum of $20,000, paid to the plaintiff, and the reimbursement of the defendant Philip Stein on a basis agreed upon, after a settlement of partnership matters and accounts, excepting the outstanding accounts due the firm and certain real estate belonging to it in Mitchell, S. D. The outstanding accounts were to be collected by *Benedict* and *Bellack*, and applied, first, to the payment of the debts of the firm, and the surplus to be divided among the copartners; the said *Benedict* and *Bellack* covenanting that they did assume, and would pay, and save harmless the plaintiff and defendant Philip Stein from, all debts, demands, etc., owing or existing against the firm of Benedict & Co., etc. That afterwards, December 8, 1887, plaintiff and defendants *Benedict* and

Philip Stein entered into an agreement whereby his connection with the partnership was terminated, and his interest therein extinguished; it being "agreed that, in consideration of *Charles Stein* consenting to the transfer of the assets of Henry Benedict & Co. to said *Henry Benedict* and *Charles II. Bellack*, said *Benedict* should pay $25,000 to Philip Stein." That the real estate in South Dakota was subject to a mortgage for $10,000, held by Marie Stein, and executed by a former owner thereof, which had been reduced by payments to the sum of $7,000,— that being a debt and lien upon said property,— which said mortgage was renewed by the joint note and mortgage of the plaintiff and *Henry Benedict*, December 6, 1887, payable two years after its date. That the plaintiff executed the said note, but was liable thereon solely as surety of the defendant *Benedict*, and that it was primarily the debt of said *Benedict* and *Bellack*. That the said real estate was allowed by *Benedict* to be idle and become depreciated and dilapidated, but still being of the value of upwards of $6,000. That *J. M.* and *T. J. Pereles*, conspiring with *Benedict* to oppress the plaintiff, purchased the note and mortgage, ostensibly for one Levinson, with money furnished by the defendant *Benedict*, with knowledge of the facts aforesaid, and the latter transferred it to said *J. M.* and *T. J. Pereles*, as trustees under the will of William E. Lamberton, deceased, and as such still claim to own it. That they combined with the defendant *Benedict* to collect the note and mortgage out of the plaintiff's property, instead of enforcing it against the defendant *Benedict* and the real estate upon which it was charged; the said trustees knowing all the time that the plaintiff was not liable, in equity, for the whole of said debt, and that it would be inequitable to collect it out of his property. That *Benedict*, whose debt it really was, was solvent, and had sufficient property, not exempt, out of which the same could

be collected, as said trustees well knew; but on the 18th of April, 1891, they procured judgment to be entered and docketed against the said *Henry Benedict* and the plaintiff, on said note, for $7,572.83 damages and $33.30 costs, in the circuit court of Milwaukee county, and issued execution thereon to the defendant *Walsh*, sheriff of said county. That the said *J. M.* and *T. J. Pereles* had notified plaintiff that he would be required to pay the whole of said judgment, with costs. That they refused to transfer the said judgment to one Louis Stein on payment of the amount thereof, or to any other person, insisting that they would collect it of the plaintiff, and refused to receive one half thereof, offered by the plaintiff, with an indemnity for all costs, etc., if they would collect the balance from the defendant *Benedict*. That the said *J. M.* and *T. J. Pereles* were about to cause the defendant *Walsh* to levy said execution and collect the same out of the separate property of the plaintiff. That the defendant *Benedict* and the defendants *Pereles* were in conspiracy against the plaintiff, and permitted the Dakota property to remain idle and unproductive, and the said *Pereles* refrained from enforcing the security against it, at the instigation of *Benedict*, and to injure and oppress the plaintiff. That *Benedict* had refused to consent to a sale or rental of the premises, although opportunities had offered, for a sufficient sum to pay said note and mortgage. That it would be inequitable to require the plaintiff to pay any part of the judgment — *first*, because the defendants *Benedict* and *Bellack* assumed and agreed to pay it; and, *second*, that upon an accounting of the receipts and disbursements made by the defendants *Benedict* and *Bellack* after November 30, 1887, in the collection of the outstanding accounts, notes, and demands then due Henry Benedict & Co., and an ascertainment of the net losses of the firm of Benedict & Co., there would be due to the plaintiff from *Benedict* and *Bellack* a consider-

able sum over and above the amount of the said judgment, which said *Benedict* and *Bellack* were bound to pay. That they have in their possession the account of moneys collected by them on claims of Henry Benedict & Co., and of disbursements on account of debts, etc., owing by said firm, so that the plaintiff cannot state the same particularly. And the plaintiff alleged that *Benedict* and *Bellack* "have in many instances and in many cases sacrificed and wasted, for their own advantage, the valid and substantial claims which were due to the said firm of Benedict & Co., but the plaintiff does not know and cannot state the particular items so sacrificed and wasted, but alleges that there will be a substantial sum found, upon an accounting, for which the defendants *Benedict* and *Bellack* should account to the plaintiff" by reason thereof, and that the plaintiff had demanded from the defendant *Benedict* an accounting and inspection of the books of said firm, which had been at all times refused.

The plaintiff prayed (1) for an injunction restraining the levy of said execution upon his property until the property of the defendant *Henry Benedict* had been levied upon and exhausted, and against the enforcement of said judgment against plaintiff's property; (2) that he have judgment that *Benedict* and *Bellack* are primarily liable, as principals, for the debt on which the judgment was founded, and that plaintiff's liability thereon is only as surety, and requiring the same to be collected out of *Benedict's* property; (3) that there be an accounting had between the plaintiff and the firm of *Benedict* and *Bellack* of the matters and things arising or done by them under or in pursuance of the agreements between them and the plaintiff and Philip Stein, of November 30, 1887, and that he have judgment for any amount found due him, and that a separate account be stated between the plaintiff and *Benedict* of the copartnership transactions of the firm of Henry Benedict & Co.,

so far as the same had not already been adjusted, for the purpose of ascertaining the net loss arising therein, and that *Benedict* be charged with five eighths thereof and the plaintiff with three eighths, and that the plaintiff have judgment against *Benedict* for any amount found due him on such account; (4) that *James M.* and *T. J. Pereles* be required to foreclose the mortgage on the Dakota property, and exhaust the security afforded by it, before having recourse to the separate property of the plaintiff under the judgment.

All the defendants answered the complaint, except the defendant *Bellack,* who demurred on the ground, among others, that there was a misjoinder of causes of action, that the court had no jurisdiction of the action, and the complaint did not state facts sufficient to constitute a cause of action. The action coming on for trial, the defendants severally objected to any evidence under the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, and that it appeared from it that the plaintiff had an adequate remedy at law at the foot of the judgment in the action described in the complaint. This objection was sustained, and the court rendered judgment dismissing the complaint, with costs, from which the plaintiff appealed.

For the appellant there was a brief by *Quarles, Spence & Quarles,* and oral argument by *Charles Quarles.* They contended, *inter alia,* that the complaint is maintainable as a bill by a surety to compel the collection of the debt from his principal. *Hinckley v. Pfister,* 83 Wis. 64; *Harris v. Newell,* 42 id. 687–692. Whether the obligation still remains in its original form or has ripened into judgment, is immaterial as affecting the surety's right to this remedy. *Hale v. Wetmore,* 4 Ohio St. 600; *McConnell v. Scott,* 15 Ohio, 401; *King v. Baldwin,* 2 Johns. Ch. 563; *Nisbet v. Smith,* 2 Bro. Ch. 582; *Bishop v. Day,* 13 Vt. 81; *Norton*

*v. Reid,* 11 S. C. 593; *Gilliam v. Esselman,* 5 Sneed, 86; *Rice v. Downing,* 12 B. Mon. 44; *Hayes v. Ward,* 4 Johns. Ch. 132; *Wright v. Austin,* 56 Barb. 13; 3 Pom. Eq. Jur. sec. 1417; *Truly v. Wanzer,* 5 How. 142; 2 Story, Eq. Jur. sec. 887. Where the principal and creditor are in collusion, seeking to collect the judgment out of the surety, an injunction will be granted. 2 Story, Eq. Jur. sec. 886; *Irick v. Black,* 17 N. J. Eq. 189; 2 White & T. L. Cas. 317–318; *Harris v. Newell,* 42 Wis. 691; *Felch v. Lee,* 15 id. 265.

For the respondents there was a brief by *Miller, Noyes & Miller,* and oral argument by *George H. Noyes.* To the point that plaintiff had an adequate remedy at the foot of the judgment in the action at law, they cited, besides cases cited in the opinion, *Coon v. Seymour,* 71 Wis. 340; *McDonald v. Allen,* 37 id. 108; *Allen v. Beekman,* 42 id. 185; *German A. S. Bank v. Fritz,* 68 id. 390.

PINNEY, J.    1. It is well settled that one circuit court of this state will not restrain the collection or enforcement of a judgment rendered in another circuit court of the state, for legal or equitable relief; and the rule is the same whether the second action be brought by a party or a stranger to the first. The proper course is to apply by petition for relief in the first suit. The power of the court in which the first judgment or decree has been rendered, to grant relief in cases like this, is undoubted. This has long since passed beyond the field of discussion, and must be regarded as settled beyond dispute. *Platto v. Deuster,* 22 Wis. 482; *Endter v. Lennon,* 46 Wis. 299; *Orient Ins. Co. v. Sloan,* 70 Wis. 611; *Cardinal v. Eau Claire L. Co.* 75 Wis. 404. Many other cases to the same effect are cited in the brief of respondents' counsel. When a proper proceeding is instituted on the foot of a former judgment, for relief against it, and "a complete determination of the controversy cannot be had without the presence of other parties,

or any persons not parties to the action have such interest in the subject matter of the controversy as requires them to be made parties for their due protection, the court shall order them to be brought in." R. S. sec. 2610. And equities between defendants, if properly connected with the relief sought, may be put in issue as to them, and tried and determined, as well as between the plaintiff and the defendants. R. S. sec. 2883; *Northwestern M. L. Ins. Co. v. Park Hotel Co.* 37 Wis. 125; *Hunter v. Bosworth*, 43 Wis. 583; *Hopkins v. Gilman*, 47 Wis. 581. The petition, which is in the nature of a supplemental or cross complaint, for the purpose of obtaining relief, may be amended accordingly. The case of *Felch v. Lee*, 15 Wis. 265, is relied on as authorizing the maintenance of a second or original suit for relief in such cases; but it is sufficient to say that the point so frequently ruled since then was not made or considered in that case, and it cannot be considered as an authority on the question. In the case of *Parish v. Marvin*, 15 Wis. 247, which is in principle the same as this, the objection was raised and sustained. Now that the circuit courts exercise legal and equitable jurisdiction in the same action, and may grant any relief which could formerly be obtained either at law or in equity, there is no necessity whatever for instituting a second action, when to do so would only tend to a multiplicity of suits, which the law abhors.

The defendants demurred *ore tenus* to the complaint, jointly and severally, and the defendant *Bellack* had his separate formal demurrer on file, insisting that the court had no jurisdiction of the action, as well as that there was a misjoinder of causes of action. It is very certain, we think, that according to the frame of the complaint, which purports to state, in form at least, but one cause of action, *Bellack* was an indispensable party defendant, without whose presence the plaintiff could not obtain the relief which in his assignment of errors he alleges the court er-

roneously denied him, namely, an accounting between himself and *Benedict* and *Bellack*, and an injunction restraining him from being oppressed as a surety for *Benedict* and *Bellack.* · The objection to the jurisdiction of the court was sufficient to defeat the action, if made by a party whose presence was indispensable, and without which the action, in its present frame, could not proceed any further. The fact that *Bellack* demurred *cre tenus* at the trial cannot be held as a waiver of his formal demurrer; certainly not, if the demurrer presented any question which could not be raised by a demurrer *ore tenus.* Without considering whether the objection to the jurisdiction of the court may not be raised on such demurrer, or the court may not of its own motion act on the objection when not raised by a formal demurrer, under the statute (sec. 2654), it must be held that it was here properly presented, so that the court might act on it and dismiss the complaint, upon which it was plain no relief, according to the settled decisions of this court, ought to be granted.

2. The proposition insisted on by the appellant, that the indebtedness upon which the judgment was rendered against himself and *Benedict* was one upon which he was liable solely as the surety of *Benedict* and *Bellack*, and that they were primarily liable thereon, is fundamental to any affirmative relief; and, unless it can be maintained, it is obvious, we think, that there is no equity in the complaint, and that it was properly dismissed. While this contention of the plaintiff was not directly contested by the respondents' counsel, in examining the complaint we have arrived at the conclusion that its allegations are entirely insufficient to show that the debt, which in form was the debt of the plaintiff and *Benedict*, in equity was that of *Benedict* and *Bellack* primarily, and the plaintiff was liable only as their surety. The complaint shows that by agreement the outstanding accounts due or owing to the firm of Benedict

& Co. were passed over to and were to be collected and got in by *Benedict* and *Bellack*, and the proceeds were to be applied to the payment of the outstanding debts of the firm, and the surplus remaining was to be divided between the plaintiff and *Benedict*, and that as a part of the transaction *Benedict* and *Bellack* agreed to and did assume to pay, and at all times save harmless the plaintiff " from, all debts, demands, dues, accounts, claims, actions, or causes of action, whatsoever, then due or owing or existing, or which might thereafter accrue by reason of anything then existing, against the firm of Benedict & Co., and from and against all damage, loss, cost, or expense by reason of the said matters," whereby it is contended that *Benedict* and *Bellack* became principal debtors, and the plaintiff was simply their surety as to such obligations; the defendant Philip Stein having been released therefrom.  The firm of Benedict & Co. was dissolved November 30, 1887, and all its merchandise, furniture and fixtures, business, and good will had been transferred to *Benedict* and *Bellack;* and the plaintiff and Benedict had an accounting in regard to their partnership dealings, and fully settled the same, except as to said outstanding accounts due to the firm, and the Dakota real estate.  The complaint shows that the note and mortgage for $10,000 upon the Dakota lands was the personal debt and obligation of Henry Koch, and that it existed in that form until the 6th of December, 1887, about a week after the partnership was dissolved, when the plaintiff and *Benedict* executed in lieu thereof their joint note to Marie Stein for $7,000, the amount then due on the former note, and secured it by a mortgage on said real estate, in lieu of the former one executed by Koch.  Although the complaint alleges that this indebtedness had become an obligation of the firm, this is a mere conclusion of law, and is repelled and refuted by the particular allegations of the complaint, showing the form and character of the indebted-

ness; and the only ground upon which it can be contended that *Benedict* and *Bellack* became primarily liable for this indebtedness is by reason of the provisions of the agreement annexed to the complaint. When it was executed, the firm of Benedict & Co., as the complaint shows, held the Dakota lands, subject to the notes and mortgage held by Marie Stein, and that the notes were the personal obligations of Koch. Their interest in the land was simply an equity of redemption. They were in no just or proper sense liable for the indebtedness; and the complaint wholly fails to state facts showing that they ever assumed it or became liable therefor, until after the dissolution of the partnership and the execution of the agreement of *Bellack* and *Benedict*, of November 30, 1887. So that the complaint does not state facts sufficient to show that the relation of principal and surety existed, either in law or equity, between the plaintiff and *Benedict* and *Bellack*. General averments in a pleading are of no avail, when inconsistent with facts specially averred in the same pleading. *Smith v. C. & N. W. R. Co.* 18 Wis. 22.

3. If, as alleged in substance in the complaint, before the action was commenced against the plaintiff and *Benedict* on their joint note, the latter had purchased it and paid for it with his own money, and had it assigned to a third party to hold to his use, the plaintiff should have set these facts up by way of defense, if available as such. No reason or excuse is given for his failure to do so; and in the absence of allegations showing that his failure was the result of fraud, accident, or mistake, unmixed with negligence on his part, he cannot be heard in equity in respect thereto. The complaint does not state facts sufficient to entitle the plaintiff to any relief founded on a pretermitted defense; and this is equally true as to all other equities available as defensive matter against the demands on which that judgment was founded, and attempted to be asserted by the

complaint.  Pom. Eq. Jur. §§ 1361, 1362; *Stowell v. Eldred,* 26 Wis. 507; *Barber v. Rukeyser,* 39 Wis. 595; *Hendricksen v. Hinckley,* 17 How. 443, 445; *Embry v. Palmer,* 107 U. S. 3, 10; *Knox Co. v. Harshman,* 133 U. S. 152.

4. The claim for an accounting, as between the plaintiff and *Benedict,* seems to have been made as an incident to the general purpose of the action to obtain relief and protection against the judgment against plaintiff and *Benedict,* and with a view to having applied to its payment any sum due from *Benedict* and *Bellack* for collections made upon the notes and accounts of the late firm of Benedict & Co., if the allegations should fail that the indebtedness upon which the judgment was rendered had been equitably paid by *Benedict,* and the assignment of the debt to the plaintiffs in the judgment was held solely to his use, as stated in the complaint.  As a complaint merely for an accounting in equity between the plaintiff and *Benedict* and *Bellack,* or either of them, it is wholly insufficient.  There was no necessity for resort to equity for discovery or the production of books or papers, for no action for that purpose can now be maintained.  It is not alleged that the defendants *Benedict* and *Bellack* denied their liability to account, or that the plaintiff had ever asked them to account, or that they had refused to account to or with him.  The substance of the allegations on this point is that they had refused to let him examine the books in which the account of these transactions had been kept, and had dealt unfairly in the matter, but there is no specific allegation of wrongdoing. The complaint is wholly destitute of allegations showing a right to resort to equity for an accounting, or that an action at law, in which the parties might have a trial by jury, would not afford the plaintiff an adequate remedy; for it is to be remembered that the partnership affairs had been fully settled and adjusted, except as to the Dakota lands and the notes, accounts, etc., due to the late firm; and, as

to the latter, *Benedict* and *Bellack* took them, with other firm assets, and were to collect and apply the proceeds and pay over the balance. The rights of the parties in this respect had been fixed by the agreement of November 30, 1887. Whatever right the plaintiff had, as a former member of the firm of Benedict & Co., to an accounting with and against *Benedict*, was, we think, merged in the agreement of November 30th, which was under seal, and in which *Bellack* had become in fact a surety for *Benedict;* and it took the place of all prior obligations on the part of *Benedict*. So that, in respect to the matters embraced in it, the remedy of the plaintiff for any delinquency of *Benedict* and *Bellack* was by an action at law for damages.

In order to sustain a suit in equity for an accounting, some special and substantial ground of equity jurisdiction must be alleged, and it must appear that the remedy at law is inadequate. The mere fact that there are cross accounts is insufficient to give equity jurisdiction. Story, Eq. Jur. §§ 458, 459; Pom. Eq. Jur. §§ 178, 1420, 1421, and cases cited. The mere relation of principal and agent is not of itself sufficient to found the jurisdiction. It is entirely plain that an action against *Benedict* or *Benedict* and *Bellack* upon their covenant and guaranty of November 30, 1887, would afford the plaintiff an adequate remedy in respect to the proceeds of the notes and accounts. *Jewell v. Ketchum*, 63 Wis. 628; *Edwards v. Remington*, 51 Wis. 336. Upon a demurrer *ore tenus* to a complaint which is clearly intended as a complaint in equity, the defendant may avail himself of the objection that the plaintiff has an adequate remedy at law. *Trustees v. Kilbourn*, 74 Wis. 452, and cases cited; *Avery v. Ryan*, 74 Wis. 599; *Denner v. C., M. & St. P. R. Co.* 57 Wis. 218. It appears that *Benedict* is amply responsible. If, as between him and the plaintiff, the latter was in fact a surety for the debt on which the judgment was founded, and the former a principal debtor,

this would not give the plaintiff any right to restrain the creditor from collecting his debt as against him as surety. This the creditor had a right to do, and the plaintiff had a complete remedy by paying the debt and maintaining an action at law against a defendant entirely solvent for his reimbursement.

Upon a careful consideration of the complaint, we are satisfied that it does not contain facts sufficient to entitle the plaintiff to any equitable relief. For these reasons we think that the judgment of the circuit court should be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.