STATE EX REL. MANNIX, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 3,701.)

(Submitted September 20, 1915.   Decided October 21, 1915.)

[152 Pac. 753.]

*District Judges—Powers—Jurisdiction—Supervisory Control— When Writ Lies.*

District Judges—Powers in District Other Than Their Own.
  1. A judge of one judicial district was called by a judge presiding over another district—though the latter was not disqualified—to act for him in the disposition of matters not in any wise connected with the administration of an estate then pending in his court. While thus sitting the substituted judge did make an order pertaining to such estate, and after returning to his own district made further orders at his chambers in the matter, although there had been no change of venue. *Held,* on supervisory control, that the orders made outside the district in which the administration was pending were void as made without jurisdiction.

  [As to disqualification of judge interested in decedent's estate to act in estate matter, see note in Ann. Cas. 1912C, 1165.]

Same—Reviewing Action of Another—Powers.
  2. An exception to the rule that one judge may not review the action of another judge of co-ordinate jurisdiction, is where the judgment or order made by the first is without jurisdiction.

Same—Control Over Proceedings of Court.
  3. A district judge can grant relief from a void or voidable judgment or order made by him, or by a judge who for the time being

was acting for him; his action in this respect being but the exercise of a legitimate control over the proceedings of his court.

Same—Status of Judge Called in.

4.  A judge of one district, called into another district to dispose of a motion to vacate an order made by one for the time being performing the functions of the judge of that district, acts as the judge of that district, and not as a judge reviewing the action of a judge of co-ordinate jurisdiction.

Supervisory Control—When Writ Lies.

5.  Where much confusion had been injected into the administration of an estate pending in court for several years, by a number of orders made without jurisdiction, a motion to set aside which had been denied, and an appeal not being available, a writ of supervisory control will issue, to the end that the estate shall not be wasted by needless litigation.

Supervisory control by the State, on the relation of Con Mannix, against the District Court of the Fourteenth Judicial District in and for the county of Broadwater and others. Writ granted.

*Messrs. Walsh, Nolan & Scallon,* for Relator, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

*Mr. H. G. McIntire,* for Respondents, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Supervisory control. W. B. Dolenty died testate in Broadwater county in 1910, and on November 22 of that year the district court of the fourteenth district, sitting at Townsend, in Broadwater county, having jurisdiction of the estate, admitted the will to probate, and in accordance with the wish of the decedent as expressed therein, appointed Isabel Dolenty, the surviving wife, executrix. As required by the order of appointment, she gave bond in the sum of $50,000. Since that time the estate has been in process of administration. Though, as shown by the report of the appraisers, the value of the estate was $109,345.26, the testator was greatly in debt, to such an extent, in fact, as is apparent from the several reports of the executrix made from time to time exhibiting the claims of creditors and

the expenses of administration already incurred and estimated as hereafter necessary, that the assets of the estate are not sufficient to pay the unsecured creditors in full. The estate is therefore insolvent. On October 14, 1913, the executrix presented her petition to the court, exhibiting the condition of the estate, and asking for an order authorizing her to sell all of the property, real and personal, belonging to the estate, in such manner as the court might direct, to pay such of the claims as still remain outstanding, some of the secured claims having in the meantime been paid. Such proceedings were had that on December 1 the court made the order prayed for. It authorized the executrix to sell for cash all the property at public or private sale as she might deem best for the interest of the estate. It directed that the sale be made not later than April 1, 1914, and required the executrix to give a supplemental bond in the sum of $25,000. It further directed that, if the sale could not be made prior to April 1, 1914, the executrix should sell the property at public auction not later than June 1. This order was made by Honorable W. A. Clark, one of the judges of the fifth district, who was at the time presiding and holding court in Broadwater county in place of Honorable John A. Matthews, the judge elected for the fourteenth district, who was then absent, but not disqualified. Honorable J. M. Clements is, and at the times referred to hereafter was, one of the judges of the first district, which is composed of the county of Lewis and Clark. Honorable Geo. W. Pierson is one of the judges of the thirteenth district, which is composed of the counties of Yellowstone, Big Horn and Carbon. Prior to April 16, 1914, Judge Clements had been requested by Judge Matthews to hold court in Broadwater county for the disposition of matters not connected in any way with the administration of the Dolenty estate. Pursuant to the request so made, Judge Clements was holding court at Townsend for Judge Matthews on April 16. Upon application of the executrix he made an order modifying the order of sale made by Judge Clark on December 1, 1913, by extending the time within which she might make the sale until October 1,

1914. Thereafter, on September 25, upon application by the executrix, Judge Clements made a second order extending the time within which the sale could be made to November 2. Under the order of Judge Clark as modified by these orders of Judge Clements, and on October 24, the executrix sold at public auction certain real property belonging to the estate. She filed her report with the clerk at Townsend, with her objections to the confirmation of the sale. Judge Clements by order fixed the hearing thereon for November 21, 1914, and directed notice to be published that the hearing would take place at Helena. At the hearing he refused to confirm the sale, and directed the executrix to accept an offer then made in writing by Laura T. Galen to pay for the property a price more than ten per cent in excess of the bid received at the sale. He further directed her to make a conveyance to Laura T. Galen. This was thereafter done. At this time the executrix applied to Judge Clements for an order reducing the amount of the bond which she had given at the time of her appointment. The order was granted reducing the amount to $10,000. On December 23, 1914, the executrix applied for an order authorizing her to transfer to one E. A. Kimpton certain real property belonging to the estate, for the consideration of $5,000. Kimpton was a creditor of the estate to the amount of $4,667.75. He was desirous of purchasing the property, and had stipulated with the executrix that, when it had been ascertained what *pro rata* of his claim he would receive upon final distribution, he would credit the amount of it upon the purchase price and pay the balance in cash. An order was made by Judge Clements authorizing the transfer. On January 2, 1915, upon the petition of the executrix, Judge Clements made an order reducing the amount of her supplemental bond to $10,000. All these orders made by Judge Clements, except the one dated April 16, 1914, though ostensibly made at Townsend upon applications submitted there, were in fact made at Judge Clements' chambers at Helena, the various applications for them being submitted to him at Helena, he having never returned to Townsend after April 16, 1914. So far as appears, the orders

dated subsequent to that made on the report of sale were made without notice and without appearance by any creditor. On February 19, 1915, on petition of Con Mannix on his own behalf as a creditor of the estate, and on behalf of the other creditors, the court at Townsend, Judge Matthews presiding, ordered the executrix to file her fourth annual report on or before March 15. This was done. The report contained a detailed statement of her receipts and disbursements during the preceding year, of sales of property, including the two made to Laura T. Galen and E. A. Kimpton, and a description of the property remaining unsold. On March 22 Mannix, for himself and other creditors, filed a motion asking that all the orders made by Judge Clements, except the one dated April 16, 1914, be annulled and set aside on the ground that Judge Clements was without jurisdiction to make them. Mannix also objected in writing to many of the items of the account, among others to the Galen and Kimpton sales, on the ground alleged in the motion, insisting that the orders be set aside, and the executrix charged with the property as if it had not been sold. For some reason not disclosed to this court, Judge Matthews, though not disqualified to hear the motion and objections, called in Judge Pierson to hear and dispose of them. Though it was admitted then, as now, that the orders were made as alleged, Judge Pierson denied the motion, holding that, as Judge Clements had been present in Townsend on April 16, 1914, when he made the order of that date he acquired jurisdiction by virtue of his action at that time to make the subsequent orders at his chambers in Helena. Judge Pierson's order was made on June 4, 1915. Upon a sworn application in the form of a petition by Con Mannix, the relator, representing himself and the other creditors of the estate, setting forth the facts recited above, this court issued an order to show cause why the court should not be directed to set aside the order of Judge Pierson overruling relator's motion and vacate the orders complained of. On the day fixed for the hearing counsel representing the court and Judge Pierson moved that the order to show cause be quashed, and that the proceeding be dismissed on the ground

that the facts stated do not warrant any relief. The motion
was thereupon submitted for final decision.

Whether it was within the power of Judge Clements to make
the orders complained of depends upon what power he acquired
[1]  over the administration proceeding as a whole by the mak-
ing of the order of April 16, 1914. That he had power to make
this order cannot be questioned. He was then sitting at Town-
send, and properly exercising the functions of Judge Matthews.
The Constitution confers upon a district judge of one district
the power to hold court in any district in the state, in place
of the resident judge when requested by the resident judge,
and makes it his duty to do so when required by law. (Const.,
Art. VIII, sec. 12.)    Section 6270 of the Revised Codes provides:
"A judge of the district court of any judicial district may hold
the district court in any. county of another district than his
own at the request of the judge thereof, and, upon the request
of the governor, it is his duty to do so; and in either case
the judge holding the court has the same power either in court
or chambers as a judge thereof." Local jurisdiction of estates
is in the county in which the decedent resided at the time of his
death, wherever it may have occurred. (Rev. Codes, sec. 7383.)
When the local judge is for any reason disqualified to sit in pro-
bate proceedings pending or about to be instituted in the court
over which he presides, it is his duty to call in the judge from the
nearest adjoining district to preside in such proceeding. It is
then incumbent upon the requested judge, if not himself dis-
qualified, to obey the request and conduct the proceeding to a
conclusion. (Sec. 7484.) As an alternative, under the same
circumstances, an order must be made transferring the proceed-
ing to an adjoining county in another district. The judge pre-
siding in the adjoining county then has the same jurisdiction
over it as if the administration had been originally cognizable
by the court in that county. (Sec. 7485.) These provisions
make it clear that the judge called in while presiding has
the same power over any action or proceeding pending therein
as he has over proceedings pending in his own district while pre-

siding there. They also make it clear that this power is only temporary or transitory, and cannot endure longer than his substitution for the local judge continues. In other words, when he leaves the district after performing the duties of the local judge for the time, his jurisdiction over any action or proceeding therein ceases. It does not alter the case that, while there he may have determined a question raised in the particular action by demurrer or motion, or that he has made an order in a probate proceeding. The local jurisdiction over the action or proceeding is not thereby changed so far as thereafter to give the temporary judge control of it while in his own district. This cannot be the result in any case, except by change of venue in the regular way, as under section 7485, *supra,* or the provisions relating to change of venue in civil or criminal cases.

Under our plan of government, the people are entitled to be served by officers of their own choice. This statement is exemplified by the various provisions of the Constitution for local government through the instrumentalities of counties and municipalities by the people residing in them. It is also exemplified by the provisions relating to the creation of judicial districts and the election of a judge in each of them by the people residing therein to preside over the court held at the seats of the respective counties constituting the district. As an officer of one county cannot exercise any official functions in any county other than that in which he was elected, neither may a district judge act judicially in any district other than his own or in relation to any matter pending in court therein in any county, except when authorized by law to do so, and in the manner and under the limitations prescribed. On this subject this court, in *Wallace* v. *Helena Ry. Co.,* 10 Mont. 24, 24 Pac. 626, said: "It will be observed that the Constitution defines the jurisdiction of the district courts and of the judges thereof, and provides for one judge in each district to exercise these judicial powers, in holding court and otherwise, as prescribed by the Constitution. The judicial powers of the district judge for each district are committed to one chosen person, with the provision that 'any judge

of the district court may hold court for any other district judge.'
Under that provision it is clear that any district judge may go
into another district and hold court for another judge. It is
equally clear, also, that without a provision of law authorizing
it, a district judge would not have authority to go into another
district and exercise his judicial functions. The jurisdiction
must be conferred by law.'' Primarily, though he is classed as
a state officer, he is such only for the purpose of administering
justice in his own district. And, though the process of his court
extends to all parts of the state (Const., Art. VIII, sec. 11), ordi-
narily the exercise of his power is limited to the territorial bound-
aries of his district.

The provisions for temporary service by a judge in another
district than his own, and for change of venue in particular cases
and proceedings, were devised to meet conditions which render
it impossible or improper for the local judge, because of his inter-
est or other disqualification, to take cognizance, or render it im-
probable that one or the other of the parties to a controversy
can have a fair and impartial trial when a jury is necessary, and
a jury free from prejudice which exists in the county cannot be
had. And, though these provisions relating to judges confer
powers, they confer them with limitations express and implied.

A judge cannot act officially in another district, except when
requested by the proper authority to do so; and the power with
which he thereby becomes vested, except as hereafter noted, con-
tinues only while he is actively engaged in exercising his judi-
cial functions *pro tempore.*

The extent of a judge's power at chambers is defined by sec-
tion 6314 of the Revised Codes: ''The judge of the district court
may at chambers issue, hear and determine writs of *mandamus,
quo warranto, certiorari,* prohibition, injunction and other origi-
nal and remedial writs, and also all writs of *habeas corpus* on
petition by, or on behalf of any person held in actual custody
in his district, and grant all orders and writs which are usually
granted in the first instance upon an *ex parte* application, and,
at chambers, hear and dispose of such orders and writs; and may

also, at chambers, make any order, issue any process, and hear and determine any matter necessary in the exercise of his powers in matters of probate, or in any action or proceeding provided by law. If a jury is necessary the judge may open court and obtain a jury as in other cases.'' Generally speaking, this provision can have application only to cases and proceedings pending in the district court where jurisdiction has regularly been obtained. It refers primarily to the judge of the district including the particular county in which the proceedings properly belong. When requested to go in his official capacity to another district, he possesses in this behalf for the time all the power over matters properly before him, he has when in his own district over matters pending there; but his power at chambers to determine any matter left pending in the district into which he has been called ceases when he has returned to his own district. To state the proposition in another way: When a judge called in ceases to hold court, the causes and proceedings pending and undetermined remain as they were left by him, to be determined by the local judge. The jurisdiction of the latter over them is not disturbed or modified in any way by the fact that the visiting judge has for the time been authorized to do anything necessary to be done in relation to them. To this general statement of the rule there may be noted these exceptions: When a judge has been substituted for the local judge because of disqualification of the latter in a probate proceeding, as to that proceeding the substituted judge must under section 7484, *supra,* preside therein until it has been concluded. This the statute declares to be his duty. As to this matter his power at chambers is defined by the statute. So again, if, under the same condition, a trial in a civil case has been conducted to final judgment by a substituted judge, he may, until the motion for new trial proceedings and the like are disposed of, make at chambers in his own district such *ex parte* orders relating to extensions of time and the like as may be necessary. (*Farleigh* v. *Kelly,* 24 Mont. 369, 62 Pac. 495, 685.) He may if the local judge is disqualified, dispose of the motion for a new trial. (Rev. Codes, sec. 7140.) It

may also be that, though the local judge may not have been disqualified in a civil case, the judge who presided at the trial should, if not himself disqualified in the meantime, properly conduct to a conclusion the proceedings on motion for a new trial, because he is best qualified to hear and dispose of them. Having assumed to conduct the case to judgment, it would seem that he must of necessity make a complete disposition of it so far as the trial court is concerned. But it is not necessary to discuss and define in this case the exact extent of the power which may be exercised at chambers by the substituted judge in these and like matters after he has returned to his own district. The accident that he has been called upon to make some order in a cause or proceeding in relation to which the local judge was not disqualified does not authorize him to retain control over it or to intermeddle with it in any way, either at his chambers in his district, or by assuming to return to the district where it is pending, unless an emergency occurs such as is provided for in section 7140, *supra,* requiring a motion to be disposed of which he may hear and determine at chambers. Except as provided by the Constitution and the provisions of the Codes cited above, it is the duty of a judge to hear and determine all legal proceedings properly cognizable in his own district. It is the right of litigants to have him do so, and the judge of no other district has the right to interfere in any way.

Judge Clements therefore had no authority to make the several orders complained of. So far as the record shows, Judge Matthews was present in his district at the time they were made. He was not disqualified. Jurisdiction of the Dolenty estate was vested in him, and Judge Clements had no right to interfere.

There is nothing in the case of *Farleigh* v. *Kelly, supra,* upon which counsel rely to justify his action, or that will uphold it in any particular. It merely decides that, when a local judge, because disqualified has called in another judge to try a particular case the substituted judge may make an order at chambers in his own district extending the time in which to prepare and serve a bill of exceptions on motion for new trial. And,

though it does furnish support for the proposition that the substituted judge after his return to his district may make any order at chambers necessary to the proper conduct of a proceeding or case properly cognizable by him, he is not at liberty to make orders relating to others. If this were the rule, the greatest confusion would result; for the several parties interested might apply at the same time to judges of two adjoining districts for the same order. A difference of opinion in the two judges would result in conflicting orders relating to the same matter.

It remains to inquire whether this court should grant the relief demanded. It is undoubtedly the general rule that one judge may not review the action of another judge of co-ordinate jurisdiction, especially when such action results in an order or judgment which may be reviewed on appeal. (17 Am. & Eng. Ency. Law (2d ed.), 718; *Fisher* v. *Hepburn*, 48 N. Y. 41; *Warren, Wallace & Co.* v. *Simon*, 16 S. C. 362.) Such action is reviewable only by the appellate court. There are exceptions to this rule, however. Among them is the case in which the particular judgment or order has been made without jurisdiction. This exception is recognized in *Kamp* v. *Kamp*, 59 N. Y. 212. An action for divorce had proceeded to final judgment which made no provision for alimony. Later the plaintiff made application for alimony; the defendant appearing and resisting it. Thereupon proceedings were had which resulted in an order granting her motion and fixing the amount of her alimony. The defendant thereafter moved before another judge that the order be vacated and set aside as void. The motion was denied. Upon appeal this order was reversed, the court holding that, though the first order was appealable, the judge to whom the motion to vacate was addressed should have granted the relief sought. The court said: "The want of jurisdiction to make the orders and give the judgment complained of is undoubtedly available to the defendant as a defense to the action referred to in the papers before us and now pending against him to enforce them; but he is at liberty by a more direct and summary proceeding to have them set aside and vacated, and the fact that proceedings

are in progress to enforce them is a reason why the court should listen to his application.'' The court also said: ''Judgments of courts proceeding within their jurisdiction cannot be questioned collaterally by other tribunals, except upon appeal upon the ground of mistake or error; but judgments by courts having no jurisdiction are as no judgments, and bind no one.'' If this announcement of the rule is correct as between co-ordinate judges, for a much stronger reason should a judge grant relief [3] from a void or voidable judgment or order made by himself, or, what is the same thing in legal theory, by a judge who for the time is performing his functions.

While Judge Clements is sitting in Helena his power is co-ordinate—that is, equal in rank—with that of Judge Matthews at Townsend, or that of any other judge sitting in his place. Whoever may be the judge presiding, he does not sit as a co-ordinate [4] judge of the court at Townsend, but is a constituent part of the court, and orders and judgments made by him are orders and judgments of that, and not of a co-ordinate, court; for a court cannot be co-ordinate with itself. It is doubtless true that in districts in which there are two or more judges presiding over distinct departments, such judges occupy the relation of co-ordinate judges, in the sense that neither may ordinarily review the action of the other; but this is not the situation in the fourteenth district. Each judge who lawfully serves there serves as the judge of that court, and when he is called upon to review any action theretofore taken in that court by himself or any other judge, he is, in contemplation of law, merely exercising a legitimate control over the proceedings of that court. When, therefore, Judge Pierson was called to dispose of relator's motion, he was bound to consider and determine the rights involved just as though he had been Judge Matthews.

All of the orders complained of, save one, were apparently made by Judge Clements while presiding in Townsend. These are therefore fair upon the face. The order relating to the sale to Laura T. Galen is not; for the order fixing the time for hearing on the report of sale fixed the place of hearing at Helena.

Presumably, therefore, the hearing was at Helena. The notice, being a part of the record discloses on the face of it that the order is void for want of jurisdiction. It was clearly the duty of Judge Pierson to set it aside; for it was of no greater validity than so much waste paper, or than if it had been signed by the attorney for the executrix. We think it was also his duty, when it was made to appear that the order authorizing the conveyance to Kimpton was made at Helena, to vacate and set it aside, for it was apparent, not only that it was made without notice, but also in violation of the terms of the order of sale, in that it amounted to a sale on credit for an indefinite time, whereas the order of sale required all sales to be made for cash. The same duty arose as to the order modifying the order of sale and those reducing the bonds of the executrix. These were all *ex parte,* and were made without any authority whatever. It is true that the two orders relating to the sales to Galen and Kimpton were appealable. (Rev. Codes, sec. 7098, subd. 3.) But we do not think the fact that the relator failed to appeal from them, if such was the fact, should be held conclusive against his right to obtain summary relief by way of a motion in the same court in which the orders had been ostensibly made.

There has been suggested to us no reason why this court should not under its supervisory power grant summary relief from [5] Judge Pierson's action. His order denying the motion is not appealable. If the relator was entitled to relief at his hands, as we have said, the facts disclosed certainly warrant interference by this court to relieve the administration from the confusion brought into it by the several orders in question. The exigencies of the case call for interference. The estate has been in process of administration for several years. It is the policy of the law that such proceedings be brought to a speedy termination, to the end that the estate involved shall not be wasted by needless expense incident to delays and the allowances made to the widow, that the creditors may have prompt satisfaction of their claims, and that the property, if any remains, may be distributed to the lawful heirs. To refuse relief in this case would

relegate the relator and other creditors to the delays necessarily incident to tedious litigation to which they will be compelled to resort in order to have the administration readjusted and set in order. On the whole a case is made, we think which comes within the purview of the court's supervisory power as defined in *State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395, and as exercised in other cases. (*State ex rel. Anaconda C. M. Co.* v. *District Court,* 25 Mont. 504, 65 Pac. 1020; *State ex rel. Sutton* v. *District Court,* 27 Mont. 128, 69 Pac. 988.)

Therefore the district court is directed to set aside the order denying relator's motion and to enter an order vacating and setting aside the orders complained of.

*Writ granted.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.