[File No. 6698.]

E. N. OLSON, D. D. Riley, I. N. Amick, C. G. A. Johnerson, and Paul Campbell, Appellants, v. E. A. DONNELLY, H. J. Yuly, E. G. Pierson, D. W. King, and H. A. Kluver, Individually and as County Commissioners of Ward County, North Dakota, a Municipal Corporation and Political Subdivision of the State of North Dakota; Roy Ilvedson as State's Attorney of Ward County, B. A. Dickinson as Assistant State's Attorney of Ward County, Halvor L. Halvorson as Attorney for Ward County, Alex Pringle as Treasurer of Ward County, and Fred M. Brey as Auditor of Ward County, Respondents.

(294 N. W. 666.)

Opinion filed November 8, 1940. Rehearing denied November 26, 1940.

*Paul Campbell,* for appellants.

*Roy A. Ilvedson,* State's Attorney, *B. A. Dickinson,* Assistant State's Attorney, and *Halvor L. Halvorson,* for respondent.

BURR, J.   This is an appeal from a judgment sustaining a demurrer to the complaint.

The complaint shows plaintiffs are taxpayers of Ward county, and the defendants are as set forth in the title; that for many years the county of Ward maintained what was known as "The Ward County Fair," organized under the provisions of chapter 102 of the Session Laws of 1919; that from the years 1921 to 1937, the county budget estimates were made and adopted on behalf of the Fair and taxes levied for its support; that illegal claims and accounts had been audited and allowed, excessive expenditures incurred, and illegal warrants issued for the purpose of operating said Fair; that on February 14, 1938, the board of county commissioners of Ward county, at that time comprising defendants Donnelly, Yuly, and Pierson, and the defendants Ilvedson, Dickinson, Halvorson and others, as petitioners began a mandamus proceeding in the district court of Ward county against Fred M. Brey, one of the defendants here, requiring him "to set up to the credit of the Fair Fund a sum of $33,850.76, and to sign warrants on bills and accounts against said Fair Fund approved by the board of county commissioners; and . . . well knowing that there was no cash in the hands of the treasurer of Ward county against which to issue warrants, and that there was no cash in the hands of the treasurer belonging to said Fund . . . did falsely and fraudulently represent to the said court that there was due and owing to the said Fair Fund a sum of $33,850.76," which had been collected and received for the use and benefit of the Fair; that the petition alleged the respondent in that action (Brey) had "wrongfully and unlawfully diverted the same to other funds, and expended the same for other purposes," and made other false and fraudulent representations so that these aforenamed defendants as petitioners "secured from this court (the district court of Ward county), and this court caused to be made and given on April 19th, 1938, a judgment of this court, adjudging among other things that a writ of mandamus issue and provide for the setting up of the fund" described, and that warrants be issued

against it, and ordering and directing the said Fred M. Brey to replenish the fund from the taxes as collected to the extent of the balance in the Fair Fund, and "commanding the county auditor to issue and sign warrants for payment of the accounts and claims against the Fair referred to aforesaid, said accounts and claims being legal obligations properly chargeable against said fund, such being the duty of the county auditor as evidenced by the law and facts found in this case."

The complaint further shows that a writ was issued commanding and directing the county auditor, the defendant Fred M. Brey, "to do and perform the matters and things in the said judgment as aforesaid by him adjudged and directed to be done and performed; and that the defendants herein named, attempting to and about to enforce the said judgment, have caused to be issued out of this court and served on the defendant Brey an order of this court directing and requiring him to show cause before this court at a time and place set, why he, the said Brey, should not be adjudged and held in contempt of this court by reason of his failure, neglect and refusal to do and perform the matters and things as in the said Judgment and the said Writ ordered, directed and commanded to be by him done and performed."

The complaint alleges that the judgment, ordering the issuance of the writ of mandamus in the action described, "is contrary to law and fact, is and constitutes and operates as a fraud upon these plaintiffs and the taxpayers of Ward county, was made and entered by the court under a mistake of fact and law, and by reason of the false and fraudulent representations made. by the relators or petitioners therein, as set forth above, and is and should be held to be fraudulent, null and void, and should be by this court in all things vacated and set aside, and the defendants above named restrained and enjoined from enforcing or attempting to enforce the same, and from doing or performing the matters and things therein and thereby by the defendant Fred M. Brey required and directed to be performed."

The complaint shows that the judgment in the mandamus proceedings was entered on April 19, 1938, and served upon the defendant Brey on or about that time; that the plaintiffs in this case did not know of the institution of said action "until long after May, 1939," and that all of the plaintiffs prior to the commencement of this action

had at all times assumed and believed in the good faith of these county officials and relied upon them to properly perform their duties. The complaint prays that the judgment in the mandamus matter be declared null and void and the defendants herein be enjoined from doing anything ordered in the judgment.

This action was commenced on or about May 3, 1940, and the original complaint therein was served on May 7, 1940. A demurrer to that complaint was interposed and sustained. The plaintiffs thereupon amended the complaint to set forth as hereinbefore stated, and again a demurrer was interposed.

This demurrer sets forth five grounds:

I

"That the court has no jurisdiction of the subject of the action.

II

"That the plaintiffs have not the legal capacity to sue.

III

"That there is a defect of parties defendant.

IV

"That several purported causes of action have been improperly united.

V

"That the complaint does not state facts sufficient to constitute a cause of action."

The trial court sustained the demurrer and ordered judgment to that effect. Judgment was accordingly entered, and the action dismissed.

There is no merit in the first ground of demurrer. This is an action to set aside a judgment of the district court of Ward county; and if such an action may be maintained, it is very clear the jurisdiction is in the district court of Ward county. Some confusion arises from the fact that in the proceedings for the writ of mandamus, the Hon. C.

W. Buttz, Judge of the Second Judicial District, sat in the place of one of the judges of the district court of Ward county and determined the issues. He heard the evidence, and made and entered the order requiring the issuance of the writ. While doing this, he was acting judge of the district court of Ward county. It was not the personal act of Judge Buttz; it was the act of the presiding judge of the district court of Ward county. In this case at bar, Judge P. G. Swenson of the First Judicial District sat as trial judge; but in so doing, he was the acting judge of the district court of Ward county.

To show want of jurisdiction, the defendants cite Enderlin State Bank v. Jennings, 4 N. D. 228, 59 N. W. 1058; Missouri Slope Land & Invest. Co. v. Hastead, 27 N. D. 591, 147 N. W. 643; McGinnity v. Dowd, 47 N. D. 554, 182 N. W. 938; Crowley v. Davis, 37 Cal. 268; Kaufer v. Ford, 100 Minn. 49, 110 N. W. 364; Marvin v. Weider, 31 Neb. 774, 48 N. W. 825; State ex rel. Mannix v. District Ct. 51 Mont. 310, 152 P. 753; and Stein v. Benedict, 83 Wis. 603, 53 N. W. 891.

None of these cases is in point. In the first case cited we held that one judge "has no power to review, on the same facts, the decision of another judge, of co-ordinate jurisdiction." But the matter arose on a motion in the same case, the motion had already been determined, and the decision was final.

The Missouri Slope Land & Invest. Co. Case arose out of "a situation wherein a judge in an adjoining district assumed to exercise jurisdiction in a cause pending in another district" (27 N. D. 597, 147 N. W. 644); and we held that "whether right or wrong, such decision could not be set aside and held for naught . . . especially upon a mere collateral attack." (27 N. D. 599, 147 N. W. 645). It will be noted also that all matters in controversy in that case were in the same proceeding.

In McGinnity v. Dowd, 47 N. D. 554, 182 N. W. 938, an action was brought to cancel a judgment which had been in existence for ten years, the theory being that the judgment had been obtained by fraud and perjury. The original action and the new action were brought in the same district court. While refusing to set aside the judgment, it was not because one district judge could not hear and determine an issue

tried before another district judge in the same county. The demurrer to the complaint was sustained on an entirely different theory.

In State ex rel. Mannix v. District Ct. 51 Mont. 310, 152 P. 753, a judge of one district was called into another district to dispose of a motion; and it was held that while he was determining the issue, he "acts as the judge of that district, and not as a judge reviewing the action of a judge of co-ordinate jurisdiction." There was no change of venue in that case; but the foreign judge was, while acting, a judge of the district court where he was presiding. After he returned to his own district, he could not make further orders in the proceeding.

Judge Buttz had no power to determine further matters in this case unless he were again called in to sit as judge of the district court, or unless there were a change of venue to his court. See King v. King, 59 N. D. 688, 231 N. W. 846.

When we examine the other cases cited, we find the same rule holds good.

. However, in this case at bar, we have an action in equity brought by different plaintiffs, against different defendants, on a different cause of action, and in the district court of the county where the judgment attacked was entered. Clearly, the district court of Ward county had jurisdiction to determine the issue, and it is immaterial who the trial judge was. He may have been one of the judges of the district court of Ward county, or one from another district required to sit in the case.

The second, third, and fourth grounds of the demurrer are deemed abandoned. This leaves the main issue—Does the complaint state facts sufficient to constitute a cause of action?

Clearly, this action is brought for the purpose of setting aside a judgment of the district court of Ward county. It is not in the same action. It is brought by entirely different plaintiffs. In the mandamus proceedings, the plaintiffs were Donnelly, Yuly, Pierson, Ilvedson, Dickinson, Halvorson, and two former county commissioners—Jacobson and Toftner—and the defendant was Fred M. Brey. In this case six of the plaintiffs in the former matter are now made defendants in this action in conjunction with Fred M. Brey—defendant in both matters. This is not an attempt to reopen the mandamus proceedings for any purpose permitted by statute. It is an independent

case, and the complaint shows that the judgment in the mandamus proceedings has become final.

Plaintiffs urge strenuously that this proceeding is not a collateral attack upon the judgment in the mandamus proceedings. In support thereof, they rely upon the text of 34 C. J. 520, et seq. This text has a multitude of citations, bearing upon fifty or more diffcrent points, and it would require a good-sized treatise to review and discuss all. It is sufficient to quote generally from the text, showing the distinction between a direct and a collateral attack.

"A direct attack on a judgment is an attempt to avoid or correct it in some manner provided by law, in a proceeding instituted for that very purpose, *in the same action* and in the same court. . . ."

"A collateral attack is an attempt to impeach the judgment by *matters dehors the record, in an action other than that in which it was rendered;* . . . In other words, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral. This is the case where the proceeding is founded directly upon the judgment in question . . . , or where the judgment forms a part of plaintiff's title or of the evidence by which his claim is supported." (§ 827.)

Recently we had occasion to consider such remedies. In Ellison v. Baird, ante, 261, 293 N. W. 793, we point out that "an independent equitable action to set aside a judgment will not lie in a case where it appears from the facts alleged in the complaint that the plaintiff has an adequate remedy by motion in the action in which the judgment was rendered."

This court, at an early date, had occasion to consider attacks upon final judgments in the cases of Kitzman v. Minnesota Thresher Mfg. Co. 10 N. D. 26, 84 N. W. 585; Freeman v. Wood, 11 N. D. 1, 88 N. W. 721; and other cases. Therein we held that even in cases where the judgment was obtained by deceit and fraud, the remedy was by motion in the particular action affected. True, in those cases, the attack was in each case made by a party to the original action. In both cases cited, the matter was presented on demurrer to the complaint, as was done in this case.

At bar we have new plaintiffs. They are taxpayers of the county. In the mandamus proceeding the county auditor was the defendant. In the case at bar, he is a defendant. He is not seeking to attack the proceeding in the first case. He is not complaining of that judgment.

The plaintiffs cite Phelps v. McCollam, 10 N. D. 536, 88 N. W. 292. However, this case does not affect the issues here; for there the action was brought upon a judgment obtained without service, and the court so found. We said: "A judgment may be set aside in an action brought for that special purpose, upon showing that such judgment was rendered without any service upon the defendant. . . . Such an action is deemed a direct attack upon the judgments." This case cited is valueless so far as the issue here is concerned.

In Stein v. Benedict, 83 Wis. 603, 53 N. W. 891, a judgment was entered in an action brought by J. M. and J. T. Pereles against this Benedict and Stein. Thereafter Stein brought an action in the same court against Benedict for an injunction to prevent a levy upon his property under an execution issued in the former action, claiming that Benedict was the principal, if not the sole, debtor; and therefore his property should be levied upon, and that through conspiracy between Benedict and the Pereleses to injure and oppress the plaintiff, the property had been lost, etc. The court held, "The collection or enforcement of a judgment rendered in the circuit court will not be restrained in a second action brought for that purpose. The proper proceeding is by a petition in the original action."

In Kaufer v. Ford, 100 Minn. 49, 110 N. W. 364, a petition for the removal of the county seat of Red Lake county was dismissed by the county commissioners. Immediately a taxpayer and legal voter, "on behalf of himself and all other legal voters," commenced a mandamus proceeding to compel the county commissioners to convene and determine the petition on its merits. The writ was granted, and the board met, determined the petition, found it sufficient, and directed the auditor to give notice of an election. Thereafter the plaintiff brought an action to enjoin the auditor from complying with the direction of the board on the ground the board had no jurisdiction to act. The court held, however, "That the judgment in the mandamus proceedings was final and conclusive upon all questions affecting the jurisdiction of the board to hear and determine the petition upon its merits, and those

questions cannot be further litigated in this or any other action;" and that that judgment was conclusive as to all legal voters on all issues which were or might have been litigated, it not being shown there was any fraud or collusion, but held the board could not convene and determine the merits without giving general notice to the voters as required by the statute, as no valid certificate could be issued by the board until after a hearing was duly had.

This action at bar is an action in equity to set aside a judgment which has become final. In Tuttle v. Tuttle, 48 N. D. 10, 181 N. W. 898, we set forth clearly and plainly the general rule regarding the validity and verity of a judgment. Therein we show "A judgment rendered by a court of general jurisdiction, having jurisdiction of the parties and subject matter, imports absolute verity. As long as it stands, it cannot be attacked collaterally by any of the parties thereto, or those in privity with them."

Here, in this case cited, the parties were not the same as in the judgment attacked. They were reversed. In the judgment attacked, the husband was the plaintiff and the wife was the defendant. In the attacking proceeding, the wife was the plaintiff, and the husband was the defendant. She brought an independent action in another district court to set aside the decree of divorce which had been obtained against her. The parties were different as plaintiff and defendant (though the persons interested were the same). It was an action at law, but it was a collateral attack on the judgment that was rendered; and therefore a demurrer to the complaint was sustained.

This holding that the judgment rendered in the former case imports absolute verity and cannot be subject to a collateral attack is set forth in McGinnity v. Dowd, 47 N. D. 554, 558, 182 N. W. 938. There was an action in equity to set aside a judgment. The parties were the same, and the court was the same, but we held "that the judgment imported absolute verity which overcame the averments against it, and that it was not subject to such a collateral attack." An independent action to set it aside was a collateral attack. The same view is held in the concurring opinion of Justice Christianson, concurred in by two other members of the court.

Plaintiffs cite Williams v. Fairmont School Dist. 21 N. D. 198, 129 N. W. 1027. Here we were considering the question of the inherent

power of the court to vacate and set aside collusive and fraudulent judgments, notwithstanding the fact that more than one year had elapsed after their entry, (page 204) and we affirmed the district court in so doing. But an analysis of the case shows that the plaintiff and appellant in this Williams Case was the plaintiff in an action in the district court against the same defendant in which a judgment was sought and entered enjoining the defendant "from issuing bonds voted at an election held on that question for the purpose of erecting a schoolhouse." Upon the injunction being granted, certiorari proceedings commenced in the supreme court to review the proceedings, and we denied the writ of certiorari. The defendants thereafter went into the district court and moved to set aside the judgment on the ground that it had been collusively and fraudulently entered. The court entertained the motion, set aside the judgment, and the action was set for hearing. An appeal was taken by the plaintiff from the order setting aside this judgment; and among the grounds urged on the appeal was that more than one year had expired. We held that the one-year limitation did not apply under such a showing, as the court had inherent power to vacate a fraudulent judgment; but it will be noted that in that case the parties were identical; it was a proceeding in the same case. The plaintiff taxpayer had obtained the injunction; the injunction was set aside because of fraud and collusion and the appeal from an order entered in the case in which he was the plaintiff. It is true it was an attack upon the judgment, but it was not a collateral attack. It was a direct attack in the same case.

In the case at bar, we have an equitable action, independent of the proceedings in which the writ of mandamus was granted. The attack is made upon the judgment. It is clearly a collateral attack. The judgment attacked imports absolute verity now and is immune to a collateral attack.

Plaintiffs cite Gilbreath v. Teufel, 15 N. D. 152, 107 N. W. 49, wherein we held that "the district court has inherent power to vacate a judgment procured by means of proceedings which are in effect fraudulent." But it will be noted that in this case cited, parties to the original action asked that the judgment rendered therein be reopened, and that they be given an opportunity to answer and defend.

The complaint shows that in the proceedings wherein the writ of

mandamus involved was issued, the petitioners were the county commissioners, who were also the managers of the Fair. They were acting in their representative capacity; and in this respect, they represented the plaintiffs in this case.

In Ashton v. Rochester, 133 N. Y. 187, 30 N. E. 965, 28 Am. St. Rep. 619, the common council of a city considered and postponed indefinitely a resolution directing a public improvement to be made; and a court of competent jurisdiction granted a peremptory writ of mandamus to compel these officers to proceed on resolution and award a contract. Later an action was commenced by Ashton and others to enjoin the collection of the assessments, and the court held that this independent proceedings was a collateral attack on the judgment "since as taxpayers they were represented therein by the city, through its officers." It is true that other features were also considered, such as that the plaintiffs had notice of the mandamus proceedings the same as any other taxpayer had, and that they stood by without seeking to be made parties to the proceedings; but the general rule of the representative character of the plaintiffs or petitioners in the mandamus proceedings holds good in the case at bar. If it were not so, any taxpayer could come in and allege fraud and claim he knew nothing about the proceedings. This holding of the New York court was reaffirmed in the same case in 31 N. E. 334.

This proceedings in mandamus brought by the county commissioners in a matter in which it was within their jurisdiction to act is binding upon all taxpayers, in the absence of fraud, until reversed. The county commissioners were the managers of the Fair, representing the public.

In Healy v. Deering, 231 Ill. 423, 83 N. E. 226, 121 Am. St. Rep. 331, where matters affecting the streets and alleys of the city were concerned, the city council of Chicago had stipulated for judgment against the city, vacating certain streets; and thereafter certain residents of Chicago commenced an action to have this judgment set aside. A demurrer was interposed, and the court held that the city, through the city council, was the representative of the public.

The people of Ward county are represented by the county commissioners in the fiscal matters of the county and as managers of the Fair, and in proceedings brought in such representative capacity, a judg-

ment therein not the result of fraud and collusion is binding upon the people. If the judgment were entered by collusion and fraud, as alleged in this case, the remedy would be to proceed in the matter where the judgment was entered, as the courts have inherent power to vacate a judgment obtained by fraud upon the court, and this is not governed by the statute of limitation of a year.

As said in Freeman v. Wood, 11 N. D. 1, 88 N. W. 721, supra, "The statute having provided a speedy remedy by motion, whereby a judgment obtained by fraud may be set aside, it is seldom that an independent action is necessary for this purpose . . . ;" and we also show in this case that "in such cases the statutory time limit of one year is no bar to the remedy."

Here we are not considering a case where third parties, by intervention or some other means, seek the aid of the court in the proceeding itself to set aside the writ. The complaint does not state a cause of action; and therefore, the demurrer was well taken. The order and judgment sustaining the demurrer is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.