LOUISE J. TUTTLE, Appellant,  v.  WILLIAM P. TUTTLE, Respondent.

(181 N. W. 898.)

**Judgment — judgment by court of general jurisdiction having jurisdiction of parties and subject-matter cannot be attacked collaterally.**

1.  A judgment rendered by a court of general jurisdiction, having jurisdiction of the parties and the subject-matter, imports absolute verity. As long as it stands, it cannot be attacked collaterally by any of the parties thereto, or those in privity with them.

**Judgment — losing party cannot maintain suit against successful party for obtaining judgment by fraud as long as such judgment remains in force.**

2.  As long as the former adjudication remains in force, the losing party cannot maintain an action against the successful party for obtaining the judgment by fraudulent and wrongful practices.

**Torts — complaint insufficient to state cause of action for wrongfully obtaining judgment.**

3.  For reasons stated in the opinion it is held that the complaint in this case fails to state facts sufficient to constitute a cause of action, and that the trial court properly sustained a demurrer thereto on this ground.


ON PETITION FOR REHEARING


**Judges — expression of opinion in former suit no ground for disqualification of judge of supreme court.**

4.  Section 100 of the North Dakota Constitution provides. "In case a judge of the supreme court shall be in any way *interested* in a cause brought before said court, the remaining judges of said court shall call one of the district judges to sit with them on the hearing of said cause." It is *held*, in construing this section, that a party litigant is not entitled to have one of the members of the supreme court adjudged disqualified, and to have the remaining members call a district judge to sit in his stead, on the ground that the member sought to be disqualified, in a former action between the same parties, has expressed an opinion, upon

NOTE.—That there seems to be considerable diversity of opinion as to the effect upon a decision of a judicial tribunal, or of a tribunal acting in a judicial capacity, of the fact that a part of the judges participating therein are disqualified, will be seen by an examination of the cases collated in a note in L. R. A. 1918D, 244, on effect on judgment of disqualification of a part of the participating judges.

the record there presented, which bears upon the rights of the parties in this action.

Opinion filed January 29, 1921.   Rehearing denied March 17, 1921.

Appeal from the District Court of Kidder County, *Graham,* Special Judge.

Plaintiff appeals from an order sustaining a demurrer to the complaint.

Affirmed.

*L. A. Simpson,* and *S. E. Ellsworth,* for appellant.

*Lawrence & Murphy,* for respondent.

CHRISTIANSON, J.   In this action the plaintiff seeks to recover damages in the sum of $300,000, which she alleges she has sustained by reason of a certain judgment, wrongfully obtained against her by the defendant. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and the plaintiff has appealed.

The sole question presented on this appeal is whether the trial court was correct in ruling that the complaint did not state facts sufficient to constitute a cause of action. The substance of the complaint is as follows: That on and long prior to October 23, 1907, the plaintiff was the wife of the defendant; that on or about that date the defendant, claiming to be a resident of the state of North Dakota, commenced an action in divorce against the plaintiff in the district court of Burleigh county, in this state, —alleging as grounds of divorce extreme cruelty and desertion; that on being served with the papers in such divorce action, the plaintiff employed three firms of attorneys, one in Chicago, Illinois, one at Jamestown, North Dakota, and one at Bismarck, North Dakota; that said attorneys in due time, in her behalf, interposed an answer denying the averments of the complaint, and alleging by way of cross complaint and counterclaim that the defendant had been guilty of extreme cruelty towards the plaintiff, and had wilfully and without cause continued to live apart from her since July, 1905; that in said cross complaint and counterclaim it was further alleged that the plaintiff was without means; that the defendant was possessed of property of the value of about $1,000,000; that all of said property had been accumulated during the married life of plaintiff and defendant; that in said answer and cross complaint the plaintiff prayed as relief "that she be granted temporary alimony during

the progress of said action, to be used as a means to pay counsel fees and procure the evidence necessary to properly defend the action brought by defendant, and to prosecute the counterclaim and cross complaint interposed by plaintiff herself; that she be granted an absolute divorce, and that she be awarded her just and equitable part of the property accumulated by the plaintiff and the defendant, and for such other and further relief as to the court seems just and equitable." That at the time of the service of said answer, and at the time said divorce action was at issue, plaintiff was prepared with strong, competent, and credible evidence to substantiate all—the allegations of said answer, counterclaim, and cross complaint; that all of said allegations were true; "that said action in divorce was fully at issue and came regularly on for trial at Bismarck, North Dakota, on the 8th day of December, 1908, before" the "then presiding judge of said district court; and *that plaintiff was ready for trial and present at said date* with her attorneys as aforesaid. Depositions of a number of witnesses in support of the allegations of plaintiff's counterclaim and cross complaint in said action had been taken and filed, and there were present at said trial a number of other witnesses on plaintiff's behalf. Commencing on said 8th day of December A. D. 1908, for a period of four days, said trial proceeded, and plaintiff's witnesses were carefully examined and all material information known to them presented to the court. A number of witnesses were called and examined in defendant's behalf, and on or about the 11th day of December, 1908, *the entire case was submitted to said Judge Winchester for determination."*

That prior to said trial the defendant had wilfully, fraudulently, and unlawfully colluded with, and corrupted and bribed, the presiding judge to decide and determine the material issues in the action, in defendant's favor; that prior to such trial the defendant had paid to said judge the sum of $1,500, and that it had been arranged and agreed between said defendant and said judge that, upon the conclusion of the trial, a decree should be entered in favor of the defendant. That the said defendant had also approached, tampered with, and influenced W. F. Cochrane, one of plaintiff's attorneys, to disparage plaintiff's cause after the decision of the trial court, and to advise the plaintiff not to appeal from said decree. That at the conclusion of the trial the judge, acting in accordance with the understanding between him and the defendant, made findings of and conclusions of law, and ordered the entry of decree in said action, in which it was found that all the allegations of defendant's complaint were abundantly supported by the evidence; that his application for a divorce

was sustained upon all the grounds alleged in the complaint, and that defendant should be granted a divorce upon the grounds stated in his complaint. That, "in accordance with said findings of fact, conclusions of law, and order for judgment made and entered as aforesaid, *a decree of said district court was entered of record on the 27th day of January* A. D. 1909, *and is now of record therein, wholly unreleased, unmodified, and unchanged.*" That the evidence offered by the plaintiff on the trial of such divorce action "was in all respects abundantly sufficient not only to refute and defend against disputed allegations of defendant's complaint, but to fully maintain the allegations of plaintiff's counterclaim and cross complaint;" that in deciding the case the trial judge, influenced by defendant's corrupt bargaining, disregarded the evidence introduced by the plaintiff, and gave no weight or credit thereto, and made his findings, conclusions, and order for judgment not in accordance with the weight of the evidence or the right and justice of the cause, but in conformity with his previous arrangement with the defendant. That after the entry of said decree her attorney, one W. F. Cochrane, was left in entire charge of the case; that said attorney disparaged and discouraged an appeal; and that when an appeal to the supreme court was ordered by the plaintiff, said attorney, "in conformity to the corrupt influence, promises, and bribery of said defendant, proceeded so indifferently and in a manner so slack and negligent" that said appeal was dismissed by the supreme court, without a review of the merits of the said appeal. "That if said action had been tried and disposed of justly and impartially, without the exercise of undue influence upon the presiding judge of said court, or upon the plaintiff's attorney, she has reason to believe and does believe that, properly placed upon a preponderance of the evidence introduced, plaintiff would have been given a divorce from said defendant, and awarded a proportion of said property accumulated during the marriage of plaintiff and defendant, to the sum of at least three hundred thousand dollars ($300,000) ; that the ground for divorce in her favor set out in her counterclaim and cross complaint would have been sustained, and the testimony of plaintiff and of her witnesses would have been held to be reputable, credible, and truthful." "That by the findings of fact of said court, its conclusions of law, and its order for judgment, induced by the wrongful and fraudulent conduct of said defendant, plaintiff has been caused great humiliation, shame, and insult; has been caused to suffer great distress of mind; has been deprived of valuable property rights and interests in the value of the sum of three hundred thousand dollars

($300,000), and has sustained loss, deprivation, and injury to her damage in said sum." "That said wrongful, fraudulent, and collusive conduct of defendant and his bargaining, tampering with, and bribing the presiding judge upon said trial and the attorney acting for plaintiff, was not brought to the notice or knowledge of plaintiff until about the 28th day of January A. D. 1919; and that with all diligence, after being credibly informed of the circumstances constituting said fraud and collusion, plaintiff brought this action for the purpose of asserting her rights against said defendant and obtaining damages for the wrong, loss, and injury done her by said defendant, under the circumstances hereinbefore set forth.

"Wherefore plaintiff prays judgment against said defendant for the sum of three hundred thousand dollars ($300,000), with interest thereon at the rate of 6 per cent per annum from the 28th day of January, 1909, together with her costs and disbursements of this action."

We are of the opinion that the court was correct in sustaining the demurrer. From the averments of the complaint it appears that plaintiff's cause of action, is predicated upon the alleged wrongful rendition of a judgment against her. She claims that the evidence adduced entitled her to judgment, and that by reason of the misconduct of the trial judge an improper judgment was rendered; that such misconduct was occasioned by the acts of the defendant, and that by reason thereof she has been damaged in the sum alleged in the complaint. From the averments of the complaint, it appears, however, that the judgment which the plaintiff seeks to attack was rendered after trial by a court having jurisdiction of the subject-matter and of the parties.

It is elementary that a judgment rendered by a court having jurisdiction of the parties and the subject-matter, unless reversed or annulled, in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity, or binding effect, by parties or privies, in any action or proceeding, 23 Cyc. 1055.

Freeman in his work on Judgments, says: "A party to a judgment feeling himself aggrieved thereby may, in a proper case, either move that it be vacated, or prosecute an appeal or writ of error, or maintain a suit in equity to enjoin its enforcement. These, unless the judgment is void on its face, are the only remedies open to him, and if he resorts to neither, or resorting to any or all he is denied relief, he cannot avoid the judgment, when offered in evidence against him, by proving that it ought not to have been pronounced, and was procured by fraud, mistake, perjury, or

collusion, or through some agreement entered into by the prevailing party, and which he neglected or refused to perform." Freeman, 4th ed. § 334.

"The settled policy of the law forbidding that a matter once adjudicated shall be again drawn in issue while the former adjudication remains in force does not permit the prosecution of an action for obtaining a judgment by false and fraudulent practices, or by false and forged evidence. Neither can a party against whom judgment has been recovered sustain an action against his adversary and the witnesses for damages occasioned by their conspiring together and procuring a judgment by fraud or perjury, as long as the judgment remains in force and unreversed; because the charges made in the second action are conclusively negatived by the former adjudication." Freeman, Judgm. 4th ed. § 289. See also 23 Cyc. p. 1066.

In considering the effect of a judgment which had been pleaded as a defense in an action for malicious prosecution (and in referring to the rule that a judgment, by a court having jurisdiction of the parties and of the subject-matter, in favor of the plaintiff, is sufficient evidence of probable cause for the institution of the action in which the judgment is rendered, even though the judgment is subsequently reversed by an appellate tribunal), the supreme court of the United States, said: "The rule, therefore, has respect to the court and to its judgment, and not to the parties, and no misconduct or demerit on their part, except fraud in procuring the judgment itself, can be permitted to detract from its force. It is equally true and equally well settled in the foundations of the law that neither misconduct nor demerit can be imputed to the court itself. It is an invincible presumption of the law that the judicial tribunal, acting within its jurisdiction, has acted impartially and honestly. The record of its proceedings imports verity; its judgments cannot be impugned except by direct process from superior authority. The integrity and value of the judicial system, as an institution for the administration of public and private justice, rests largely upon this wholesome principle." Crescent City L. S. L. & S. H. Co. v. Butcher's Union, S. H. & L. S. L. Co. 120 U. S. 141, 159, 30 L. ed. 614,621, 7 Sup. Ct. Rep. 472.

When a court of general jurisdiction acts within its jurisdiction, every presumption is in favor of its judgment. This includes the presumption that such courts act rightly and in conformity to law. In other words, where the decree is such a one as the court had jurisdiction to render, the presumptions are all in favor of its regularity and validity until vacated

by some proper proceeding instituted directly for the purpose or avoiding or correcting it. 15 R. C. L. pp. 875, 876; 23 Cyc. 1215 et seq.

Appellant contends that under the recent decision of this court in Shary v. Eszlinger, 45 N. D. 133, 176 N. W. 940, a judgment may be impeached, on the ground of fraud, in any proceeding. The portion of the opinion upon which this contention is predicated is the following quotation from Hutchins v. Lockett, 39 Tex. 165: "That a judgment rendered by a court of competent jurisdiction cannot be attacked in a collateral proceeding is a rule of almost universal application. Nevertheless a judgment may be impeached in any proceeding upon the ground of fraud or satisfaction. It is said 'that the maxim that fraud vitiates everything applies to judgments' (Freeman, Judgm. p. 90); and this rule may be applied to judgments affected by fraud, whether the fraud arises at the time of or after the rendition of the judgment. The court has only to determine that a judgment is founded in fraud, in order to authorize its impeachment as a nullity." 39 Tex. 159.

The question presented in Shary v. Eszlinger was, What faith and credit must be accorded in this state to a judgment rendered by a district court in Texas? In order to determine that question, it became necessary to ascertain what effect was given to such judgment in the state of Texas. Or, as stated in the decision in Shary v. Eszlinger, the question presented in that case "resolved to this,—Would the facts set forth in the answer, and covered by the proof, be sufficient to authorize the courts of Texas to set aside the judgment or enjoin the enforcement thereof?" The quotations from Hutchins v. Lockett, and from other Texas decisions, were set forth for the purpose of showing what force and effect was given in Texas to judgments rendered in that state. By so quoting, we did not necessarily approve of what was said in the Texas decisions. It was not for us either to approve or disapprove thereof. We were concerned only with ascertaining what the law of Texas was as regards the force and effect of judgments rendered by the courts of that state. The quotation, from Freeman on Judgments, contained in Hutchins v. Lockett, was taken from that portion of Freeman's work which deals with the vacating judgments by motion, and hence does not support the contention that a judgment procured by fraud is subject to collateral attack by the parties thereto or those in privity with them. On the contrary, that noted author, elsewhere in his work, lays down the rule: "The parties to an action, and the persons in privity with them, cannot collaterally attack or impeach a judgment for fraud; and any attack must be regarded as col-

lateral which is made in 'any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying' a judgment or decree." Freeman, Judgm. 4th ed. § 336.

In Shary v. Eszlinger, we found that the laws of Texas permitted a judgment obtained by fraud to be vacated or the enforcement thereof to be enjoined. 176 N. W. 939. And we concluded that the requirement of the Federal Constitution, "that full faith and credit shall be given in one state to the judgments obtained in another, will not prevent the courts of this state, in which legal and equitable rights and remedies are administered in one court and in one form of action, from permitting an *equitable* defense to be interposed against a judgment obtained by fraud in another state, where the courts of the state where the judgment was rendered are authorized to vacate or enjoin the enforcement of a judgment obtained by fraud."

In this case the plaintiff seeks to attack the judgment in the divorce action collaterally. It is contended that the demurrer admits that the judgment is wrong, and that it was obtained by the wrongful and unlawful practices set forth in the complaint. This contention ignores the fundamental rules applicable to judgments. The complaint shows that the judgment in question was rendered by a court of general jurisdiction, in an action duly pending and brought to trial before it; that the court had unquestioned jurisdiction of the parties to, and the subject-matter of, the controversy determined by the judgment; that the judgment was rendered more than ten years ago, and that it has not been set aside or corrected in any proceeding provided by our laws for the vacation or correction of judgments. The averments in the complaint charging misconduct and wrongful acts on the part of the trial court contradict the basic provisions of the judgment. The very essence of plaintiff's action is that the judgment is wrong,—that the facts required the rendition of a judgment different from that which was rendered. The judgment cannot be thus impeached. As long as it stands, it imports absolute verity as to every proposition of law and fact essential to its existence against the parties to it. Schultz v. Schultz, 136 Ind. 323, 43 Am. St. Rep. 320, 36 N. E. 126; Freeman Judgm. 4th ed. § 289; VanFleet, Collateral Attack, § 550. Hence, the allegations of misconduct on the part of the trial court and the defendant are for all purposes the same as though they were not contained in the complaint. So far as this action is concerned, they are conclusively denied, and said to be without foundation in fact or in law, by the other allegations in the complaint, which allege that the judgment was render-

ed by a court of competent jurisdiction, having jurisdiction of the parties and the subject-matter. While that judgment remains in full force and effect, the losing party "can never leap over it, treating it as void, and litigate her right anew, by commencing an action, as if it had not been made, and in a collateral manner attack its validity." VanFleet, Collateral Attack, § 550; Freeman Judgm. 4th ed. §§ 289, 334, 337; 15 R. C. L. pp. 875, 876.

The trial court was clearly right in sustaining the demurrer. The order appealed from is affirmed.

ROBINSON, Ch. J., and BRONSON and BIRDZELL, JJ., concur.

GRACE, J. (dissenting). It is our theory of this case, that the decree of divorce was absolutely void, and that it was of no effect. It is also our theory that the court had no jurisdiction to enter the decree. If this be true, it is of no force or effect, and should be wholly disregarded.

There is no objection to the general rule, that where the court has jurisdiction of the parties and the subject-matter of a particular case, its judgment, until reversed or annulled in some proper proceeding, is not open to attack or impeachment in an collateral action or proceeding, on account of errors or irregularities not affecting jurisdiction.

Our objection in this case will be directed to the claim or contention, that the trial court had no jurisdiction to hear or determine proceeding in divorce or render a decree therein. It is, we think, generally admitted that irregularity in process, or in the manner of service, and other such matters as might have been set up by way of defense, are not sufficient to permit a decree or judgment to be attacked collaterally.

These principles, however, have no application where the judgment is wholly void. It may be well at this point to set forth that part of the plaintiff's complaint as set forth in the majority opinion, for the purpose of directing special attention to it. We do not think it necessary to set forth the complaint in full.

"That prior to said trial the defendant had wilfully, fraudulently, and unlawfully colluded with and corrupted and bribed the presiding judge to decide and determine the material issues in the action, in defendant's favor; that prior to such trial the defendant had paid to said judge the sum of $1,500, and that it had been arranged and agreed between the said defendant and said judge that, upon the conclusion of the trial, a decree should be entered in favor of the defendant. That the said de-

fendant had also approached, tampered with, and influenced W. F. Cochrane, one of plaintiff's attorneys, to disparage plaintiff's cause, after the decision of the trial court, and to advise the plaintiff not to appeal from said decree. That at the conclusion of the trial the judge, acting in accordance with the understanding between him and the defendant, made findings of the fact and conclusions of law, and ordered the entry of decree in said action in which it was found that all the allegations of defendant's complaint were abundantly supported by the evidence; that his application for a divorce was sustained upon all the grounds alleged in the complaint, and that defendant should be granted a divorce upon the grounds stated in his complaint. That, "in accordance with said findings of fact, conclusions of law, and order for judgment, made and entered as aforesaid, a decree of said district court was entered of record on the 27th day of January A. D. 1909, and is now of record therein wholly unreleased, unmodified, and unchanged." That the evidence offered by the plaintiff on the trial of such divorce action "was in all respects abundantly sufficient not only to refute and defend against disputed allegations of defendant's complaint, but to fully maintain the allegations of plaintiff's counterclaim and cross complaint;" that in deciding the case the trial judge, influenced by defendant's corrupt bargaining, disregarded the evidence introduced by the plaintiff, and gave no weight or credit thereto, and made his findings, conclusions, and order for judgment not in accordance with the weight of the evidence, or the right and justice of the cause, but in conformity with his previous arrangement with the defendant. That after the entry of said decree her attorney, one W. F. Cochrane, was left in entire charge of the case; that said attorney disparaged and discouraged an appeal; and that when an appeal to the supreme court was ordered by the plaintiff, and said attorney, in conformity to the corrupt influence, premises, and bribery of said defendant, proceded so indifferently and in a manner so slack and negligent that said appeal was dismissed by the supreme court, without a review of the merits of the said appeal. That if said action had been tried and disposed of justly and impartially, without the exercise of undue influence upon the presiding judge of said court, or upon the plaintiff's attorney, she has reason to believe and does believe that, properly placed upon a preponderance of the evidence introduced, plaintiff would have been given a divorce from said defendant, and awarded a proportion of said property accumulated during the marriage of plaintiff and defendant, to the sum of at least $300,000."

Further allegations of the complaint are set forth in the majority opinion. To the complaint a demurrer was interposed. It is a well-settled rule of pleading, that the demurrer admits all the allegations of the complaint, well pleaded. That is, that all such allegations of the complaint must be taken as true.

For the purposes of this appeal, the demurrer admitting the allegations of the complaint which sets forth the fraud and bribery of the trial judge, and the fraud of the attorney, the situation is practically the same as if a trial had been had upon those questions, and it had been found, as a fact, by a trial court, that the trial court before which the trial occurred had been guilty of fraud and bribery, as alleged in the complaint, and one of the attorneys guilty of fraud, as there alleged. With this situation confronting us, it is well to consider the question of jurisdiction. That question, as presented here, is an abstruse one. It is one, as it presents itself here, that is quite difficult of comprehension and solution.

"The supreme power in each civilized state enacts general laws declaring and fixing the rights of persons under its dominion. It then establishes judicial tribunals for the purpose of declaring and fixing such rights in particular cases. The power given by law to the tribunal to declare and fix such rights is called its jurisdiction. *Jurisdiction is simply power.*" VanFleet, Collateral Attack, § 58.

Jurisdiction is the *power* to hear, determine, and give judgment, not corruptly, but honestly. It was not intended by the Constitution, that the powers delegated to the courts could be used corruptly, and in matters which come before them they have no power to act corruptly. They may decide a case rightly or wrongly, and still their proceedings and the judgment entered may be valid, but this is far from admitting that a court may act in a given matter, in a corrupt manner and from a corrupt motive, and still render a valid judgment. This cannot be. It is against public policy.

"Every litigant, including the state in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge." 15 R. C. L. 539.

It should be admitted, it would seem, that a trial court which is interested in the case would be wholly disqualified to hear, try, and determine and render judgment in the same. Of course, if the allegations of the complaint are true, and here they must be assumed to be true, the trial court in this case was getting $1,500 for deciding the case in defendant's favor; that, of course, constituted an interest in the litigation.

It was held in one case that, where the brother of the trial court was one of the leading attorneys in the case, and the matter was to determine his right to certain attorney's fee, and the trial court ordered $150 counsel fees in his favor, the pecuniary interest of the attorney, in the result of the case, disqualified the judge. Roberts v. Roberts 115 Ga. 259, 90 Am. St. Rep. 108, 41 S. E. 618.

Cooley, in his Constitutional Limitations, p. 507, says: "There is also a maxim of law regarding judicial action which may have an important bearing upon the constitutional validity of judgments in some cases. No one ought to be a judge in his own cause; and so inflexible and so manifestly just is this rule, that Lord Coke has laid it down that even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void in itself. *This maxim applies in all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise.* It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not; all his *powers* are subject to this absolute limitation; and when his own rights are in question, he has no authority to determine the cause. To empower one party to a controversy to decide it for himself is not within the legislative authority, because it is not the establishment of any rule of action or decision, *but is a placing of the other party, so far as that controversy is concerned, out of the protection of the law, and submitting him to the control of one whose interest it will be to decide arbitrarily and unjustly.*

"Nor do we see how the objection of interest can be waived by the other party. If not taken before the decision is rendered, it will avail in an appellate court; and the suit may there be dismissed on that ground. *The judge acting in such a case is not simply proceeding irregularly, but he is acting without jurisdiction.* And if one of the judges constituting a court is disqualified on this ground, the judgment will be void, even though the proper number may have concurred in the result, not reckoning the interested party.

"*Mere formal acts necessary to enable the case to be brought before a proper tribunal for adjudication, an interested judge may do; but that is the extent of his power.*"

It is a familiar principle, that a judge cannot sit in the trial of his own case. It cannot be said that, in view of the allegations in this complaint, the trial judge did not have an interest in this case. Indeed, the principle here involved reaches much further than that. Assuming the allegations

of the complaint to be true, he had an interest of $1,500 in the litigation, —that is, he was to receive that upon a favorable termination of it, and he could terminate it favorably because he was judge in the case of both the law and the fact, and had agreed to decide the case in defendant's favor. Thus, the plaintiff's rights were wholly ignored, disregarded, and given no consideration.

It is our contention, assuming or regarding the allegations of the complaint as true, that the very moment the court agreed to receive the $1,500 for deciding the case in favor of the defendant, its power absolutely ceased. Its jurisdiction was at an end.

We will assume a case where the court has jurisdiction of the subject-matter and of the person, and the issues are joined. It will be conceded, in such circumstances, that the court has jurisdiction, but, if one of the parties makes and files an affidavit of bias or prejudice against the judge, his jurisdiction immediately ceases. He cannot take another step in the proceeding which will affect the rights of the parties. It will thus be seen that the jurisdiction may be acquired, and in certain circumstances may again depart, without the trial court having any authority or power to retain it.

In this jurisdiction, where such an affidavit is filed, it is not necessary to give any reasons, or produce any evidence of the bias or prejudice of the judge. A simple affidavit of bias or prejudice terminates the power of the judge. Of course, the charge here involved is not bias or prejudice, but corruption of the trial court by bribery; and where that is shown to exist, it just as effectively terminates the power of the court to proceed in the matter before him, as in the case of the filing of an affidavit of prejudice, and this, by reason of § 22 of our Constitution, which, so far as material here, is as follows:

"All courts shall be open, and every man for any injury done him in his lands, goods, person, or reputation shall have remedy by due process of law, *and right and justice administered without sale, denial, or delay.*" This provision of our Constitution is self-executing. Similar constitutional provisions in other state Constitutions have been so held. Rea v. State 3 Okla. Crim. Rep. 276, 139 Am. St. Rep. 954, 105 Pac. 385.

In that case the question was an affidavit of prejudice against the judge, or a motion for a change of judge, which was overruled, on the theory that the same was filed after the witnesses in the case had been summoned. The court .there said: "This requires a consideration of § 15 of Bunn's Constitution of Oklahoma, which is as follows: "The courts of

justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Substantially the same clause is contained in the Constitution of Idaho. This provision came before the supreme court of that state for consideration in the case of Day v. Day, 12 Idaho, 556, 86 Pac. 531, 10 Am. Cas. 260, and the court said: "It is contended by counsel for appellant that under the provisions of § 18, art. 1, Constitution of Idaho, 'the people have prohibited a court from trying a case in which he is prejudiced by or for either party.' Said section is as follows: 'Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character, and right and justice shall be administered without sale, denial, delay, or prejudice.' They also cite paragraph 40 of the Magna Charta, which reads: 'To none will we sell; to none will we deny or delay right or justice.' They contend through that constitutional provision that the people have declared that justice shall be administered not only without sale, without denial, and without delay, but also without prejudice, and contend that the legislative power to pass laws regulating the change of venue is limited by constitutional provisions respecting the subject. 4 Enc. Pl. & Pr. p. 377. It is contended that said section of the Constitution is self-acting, self-executing, and requires no legislative provision for its enforcement, and cannot be abridged or modified by any legislative or judicial act. There is no question but what said provision is self-operating, and it is regarded as settled in this country that all negative or prohibitive clauses in a Constitution are self-executing. [Citing cases] * * * *The legislature neither by neglect to act nor by legislation can nullify a mandatory provision of the Constitution. * * * Can it be contended, in the face of the command of said provision of our Constitution, that the legislature could legally declare that the bias and prejudice of a judge should be no cause for a change of venue? I think not. And if, in the face of that provision, the legislature neglects to specify in a statute that the prejudice of the judge is a ground for a change of the place of trial, then the very object and purpose of that provision of the Constitution may be nullified and set at naught. Regardless of the statutory provision, where such a state of facts appears as in the case at bar, and a change of place of trial is demanded because of the prejudice of a judge, a change of venue, or at least of judges, should be granted to preserve from discredit the judiciary of the state."*

It will be noticed that the Constitution of Idaho provided that "right and justice shall be administered without sale, denial, delay, or prejudice," and that the legislature has neglected to specify in the statute that prejudice of the judge is a ground for a change of the place of trial, and the court held that it was error of the trial court not to grant a change of the trial, notwithstanding the omission in the law above referred to, for the reason that not to do so was in contravention of that section of the Constitution of that state thereunder consideration.

If that reasoning is correct—and we see no weakness in it—it is just as applicable here, where, in the state of the pleadings by demurrer to the complaint, it is admitted that justice has been sold, and where there is no law providing in these circumstances, that the trial court shall thereafter not have jurisdiction, as it was in the Idaho case, to prejudice where there was no law which specified that prejudice shall be a ground for a change of venue.

In this state we have no statute of which we are cognizant, which provides that, where a court is bribed or makes a sale of justice in judicial proceedings, that its jurisdiction ceases as soon as those acts occur. But surely no law is needed. Section 22 of our Constitution is self-executing. It is thus sufficient in itself for the prevention of evils mentioned therein. By its very provisions no court has any power to do anything therein prohibited, and courts have jurisdiction to administer justice only, in harmony with the true intent thereof.

We are of the opinion that the decree of divorce was absolutely void and of no effect, for the reason that, assuming the allegations of the complaint as true, it was procured by bribery, and the trial court had no jurisdiction to render it. It was of no validity or verity, in the face of this record. Hence, this proceeding is not a collateral attack, for a collateral attack implies a valid judgment or decree, which does not exist in this case.

A judgment absolutely void is not made valid by the lapse of time. Heffner v. Gunz, 29 Minn. 108, 12 N. W. 342; Feikert v. Wilson, 38 Minn. 341, 37 N. W. 585; McNamara v. Casserly, 61 Minn. 335, 63 N. W. 880.

If the demurrer in this case were overruled, which it should be, and the defendant should thereafter interpose his answer, and the case thereafter proceeded to trial in the ordinary way upon the issues thus formed, it is manifest that, before plaintiff could recover the damages claimed, she would be required to prove, by competent testimony, the allegations

of her complaint. She would be required to prove that the trial court was bribed; that it committed fraud. She would be required to prove that the attorney referred to in the complaint committed fraud. We believe that law and justice require that she should have that opportunity.

Assuming the allegations of the complaint to be true, it would appear that the trial court closed the doors of justice to her, and this, in defiance of § 22 of our Constitution, which requires that all courts shall be open; that every man, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due process of law. There was no due process of law in the trial court, if, as charged by the complaint, that trial court was bribed for $1,500 to decide the case in defendant's favor. That court was not open, but closed.

It seems so far, that this court, by inadvertence and failure to fully comprehend and consider the seriousness of the charges of the complaint, and by, in effect, holding that a void judgment is made valid by the lapse of time, has, in effect, closed the doors of justice to this court to plaintiff. They have, in effect, said to her, "For the injuries you have sustained, for the loss of your share of the community property, for the humiliation and suffering you have endured, notwithstanding § 22 of the Constitution, this court and no courts are open to you, but all are closed. You have no remedy, notwithstanding that your complaint charges that the trial court was bribed to decide the divorce proceeding for defendant, and notwithstanding that the demurrer interposed to that complaint admits all the allegations and charges of the complaint well pleaded."

How can this plaintiff go hence, except with the belief that she has been granted injustice and no protection for her sacred rights of person and property, and this from those very tribunals she, no doubt, in common with all true citizens, has been taught all her life, to revere?

Of course, it is astounding that a charge of bribery should be made against one holding a high and responsible judicial position. Other judicial officers who are called upon, in the discharge of their duties, to consider such a charge when presented to them in due course of law, are apt to rebel at the thought that such a charge could be thought of. However, judicial officers are only men, mere human beings, who, after they enter on the discharge of their high duties, retain the same frail human nature they possessed before they were elevated to that high and responsible position.

Judicial officers, as a class, perhaps have no higher degree of integrity than the average of any other class of public officers, whose duties

are different in nature, and who are called upon to discharge such official duties, in the interest and to the benefit of the public.

Before judicial officers became such, they were lawyers, and their integrity as judicial officers will not likely be of any higher degree than that possessed by them while they were discharging the office of an attorney and counsel at law.

Man was created in the image and likeness of God, but when he becomes a judicial officer, he does not take on any additional attributes of Divinity. He is yet a mere. man, so that it is possible for one invested with the powers of a judicial officer to depart from the paths of rectitude, righteousness, and integrity. If one invested with the high powers of a judicial officer should, in a moment of weakness, depart from the paths of integrity, in the discharge of his duty, to such an extent that his act becomes a venal one, and thus place a stain upon the robe of ermine with which the authority of the Constitution and the power of the people have draped his person, other judicial officers and tribunals will draw no nearer perfection, will become no stronger in the distribution of justice, if, by choice language, fine phrases, and subtle reasoning, they seek to excuse the weakness of their brother judicial officer.

It is to the credit of the judiciary, that actual venality is seldom charged, and perhaps this is by reason that the judiciary of past centuries have taken extra precaution never to exculpate any material venal infraction of judicial integrity. It may be that judicial officers cannot wholly shake off the effects of the environment with which they were surrounded prior to the time they were elevated to the high position of a judicial officer. If prior to their elevation, and during a professional career as attorneys, they were engaged in defending great corporate interests; or had been continually defending or participating in litigation that affected any other particular class of persons, and, professionally, they had always lived, moved, and acted in that environment; it is possible that when they assume to discharge the duties of a high judicial position, to which they may have been elevated, and however honestly and fairly they may endeavor to discharge their duties, that, perhaps, unconsciously, they may be influenced by the unseen power of their previous environment. But, in this, while there may be a weakness in the judicial officer, there is no venality. In his heart, soul, and conscience, he is honest, as a man and a judicial officer, and an honest man is one of the noblest works of God,

The judicial officer, in enunciating decrees and rendering judgment,

is, so to speak, invested with an atom of Divinity, by which, for a brief moment of time, he is authorized to exercise an attribute of the Omnipotent, but, after all, his decrees and judgments are, in their nature, interlocutory. They may be final, so far as time is concerned, but are not so for eternity. For, finally, the actions of men, including the decrees and judgments of courts, must pass a final review before a final tribunal of justice, whose Judge cannot err, whose Decree will pronounce justice, and there, no doubt, the majority opinion will be overruled.

## ON PETITION FOR REHEARING

CHRISTIANSON, J. Appellant has petitioned for a rehearing. The petition is based on two grounds:

1. That Mr. Justice Robinson, who sat as a member of the court upon the hearing on the appeal and joined in the former decision, was disqualified, and should not have participated in the hearing or determination of the case; and,

2. That the former decision was erroneous in holding that the complaint did not state facts sufficient to constitute a cause of action.

1. On November 29, 1920, the appellant filed a written petition wherein attention was called to the following statement contained in the opinion prepared by Mr. Justice Robinson in Tuttle v. Tuttle, 46 N. D. 79, 181, N. W. 888: "It is shown that in January, 1918, defendant commenced an action against the plaintiff in the district court of Kidder county to recover about $480,000 ($300,000, with interest from January, 1909). The basis of the action is that in the divorce suit she should have recovered at least $300,000. Such an action, in the opinion of the writer, taken in connection with the proceedings in this case, gives to the whole a color of blackmail. It shows an attempt to extort money from the plaintiff, to force him to buy his peace by harassing him with vexatious, groundless, and expensive litigation. The judgment in the case was given after a full and fair hearing. It imports absolute validity and verity. It is not subject to a collateral attack, nor is the plaintiff, in the opinion of the writer, subject to a suit for obtaining the judgment. Hence, no party has a right to commence or prosecute such an action." And it was contended that this evidenced such bias and prejudice on the part of Mr. Justice Robinson in favor of the respondent and against the appellant as to disqualify him from sitting in the case. And it was asked that the remaining judges of this court call one of the district judges to sit in his

place and stead. In consideration, the remaining judges of this court did not deem that the petition presented facts which justified them in calling in a district judge, but that at the most it presented such a state of facts that Mr. Justice Robinson must be permitted to determine for himself whether it was improper for him to sit. He maintained that he entertained no bias or prejudice whatever, and had not even the slightest acquaintenance with the parties. The case was argued on December 8, 1920. Upon the hearing of the appeal—and before the oral argument commenced,—the conclusions reached by this court upon appellant's said application were announced orally. Appellant's counsel thereupon made a brief argument or statement in connection with said matter; and in connection therewith, Mr. Justice Robinson, from the bench, stated, in substance and effect, that the reference made in the former opinion to this action was made for the reason that the complaint in this case was attached to and made a part of the counter affidavits filed in that case; that while, of course, he had some opinion as to the law relative to the collateral impeachment of judgments, nevertheless he was not only willing and ready to hear appellant's argument, but could and would do so with an open mind; and that the opinion expressed in the decision of the other case would not be permitted to interfere with a fair and impartial consideration and determination of this case. The cause was thereupon argued on the merits, with Mr. Justice Robinson sitting as a member of the court. In the circumstances, we did not deem this question one arising on the record in the case as submitted or of sufficient importance to dignify it by formal discussion in the opinion. In the petition for rehearing, however, this is made the main basis for attack upon the former decision.

In Tuttle v. Tuttle, supra, a motion was made to vacate the judgment rendered in the divorce action. The matter was submitted upon affidavits. In one of the affidavits submitted by the defendant, reference was made to the fact that L. C. Pettibone, who made the principal affidavit, had, some time prior to the institution of the proceeding to vacate the judgment, brought two actions to recover large amounts against the defendant, Tuttle, and that one J. S. Greene had instituted an action against said Tuttle to recover about $10,000 in connection with a land transaction some ten or twelve years old, in which the said Pettibone was interested; also, that on the 18th day of June, 1918, the said Louise J. Tuttle had commenced this action against said Wm. P. Tuttle, to recover approximately $480,000, upon the claim that if a decree had been granted to her in the divorce case, she would have received from said Wm. P. Tuttle at

least $300,000; and a copy of the complaint in this action was attached to and made a part of said affidavit. It was contended by counsel for the defendant, Tuttle, that said L. C. Pettibone, who made the principal affidavit, had inspired the institution of the various actions and proceedings. In other words, the showing that these actions had been brought was made as bearing upon motive and credibility. The question of the sufficiency of the complaint was in no manner alluded to either in the affidavits or the argument.

The only basis for challenging the right of a member of the supreme court to sit on the hearing of a cause is § 100 of the Constitution, which provides: "In case a judge of the supreme court shall be in any way *interested* in a cause brought before said court, the remaining judges of said court shall call one of the district judges to sit with them on the hearing of said cause." N. D. Const. § 100. It will be noted that the Constitution makes *"interest"* the ground of disqualification. Nothing is said about "bias" or "prejudice." "Interest" is by no means synonymous with "bias" or "prejudice." The distinction between the two terms has been recognized from the early period of the English common law. Thus, under the common law one having an interest in the litigation was disqualified as a witness. But in applying this rule it was held that "an interest disqualifying a witness must be *legal,* as contradistinguished from mere prejudice or bias arising from relationship, friendship, or any of the numerous motives by which a witness may be supposed to be influenced." Bouvier's Law Dict. Rawle's 3rd Rev. p. 1649.

Cyc. says: "The interest which disqualifies a judge is a pecuniary interest, or one which involves some individual right or privilege. It must be a direct interest in the subject-matter of the litigation." 23 Cyc. 576.

"In the absence of statutory provision, bias or prejudice on the part of the judge does not disqualify him. In many states, however, there now exists statutes which expressly make the bias or prejudice of a judge a ground of disqualification. But disqualifying a judge on the ground of prejudice is so liable to abuse that some states have refused to adopt it." 23 Cyc. 582.

In our constitutional convention there were several lawyers of experience and ability. They were doubtless wholly familiar with the distinction between what is meant when it is said that a party has an "interest," or is "interested," in a cause, and when it said that he is "biased" or "prejudiced" therein in favor of one party or against the other. They were, also, doubtless familiar with what is said in Cyc.,—that there was

grave danger of abuse, if bias or prejudice was made a ground upon which parties litigant might challenge the right of the members of the supreme court to sit. And apparently they determined that the members of the court ought not to be subjected to challenge by parties litigant on such grounds. But even if bias or prejudice constitutes a ground of disqualification, it seems clear that the appellant has failed to establish it.

Cyc. says: "The disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case. And where, under the law, the bias or prejudice of a judge disqualifies him, it must be made to clearly appear not only that the bias or prejudice exists, but that it is of a character calculated to seriously impair his impartiality and sway his judgment." 23 Cyc. 582, 583.

In considering the same subject, Ruling Case Law says: "The basis of the disqualification is that personal bias or prejudice renders the judge unable to exercise his functions impartially in the particular case, and therefore it must be shown that he is biased against, or entertains ill will or hostility toward, the defendant, of such character as might prevent him from giving the defendant a fair trial; and this must be shown as a matter of fact, and not as a matter of opinion of the defendant or any other person. The words bias and prejudice as used in the law of the subject under consideration refer to the mental attitude or disposition of the judge towards a party to the litigation, and not to any views that he may entertain regarding the subject-matter involved. Hence a judge is not disqualified from presiding at a criminal trial by the fact that he looks with abhorrence on the commission of crimes; or to try a contested election because he is an active politician, and one of the parties to the contest is a member of his political party, or because he had expressed his opinion on election day that a challenged voter had a right to vote; or to pass on an application to enjoin registrars from filing a registration list which omits the names of certain persons opposing a faction in which he is interested, and to compel them by mandamus to place such names on the list; or to try a case involving a violation of the liquor laws, because he is strongly opposed to the sale of liquor in any form, though if he has publicly pledged and committed himself to revoke the license of every person arraigned before him having license to sell liquor, and is personally hostile to the licensee, it would seem to be a good reason why he should not try cases involving the revocation of the license. It has also been held that

a judge is not disqualified from sitting in a proceeding to punish a contempt consisting of imputation of his motives and attacks upon his integrity, or to try one who has published a newspaper libel against him. Personal knowledge of a judge, of former proceedings before him, is not a disqualification, nor does any disqualification result from the fact that he is convinced of the guilt of an accused, or that he has been an admirer and friend of one accused, and regards him as scrupulously honest. The fact that a judge conducted the preliminary examination which resulted in the prosecution of accused does not, in the absence of any showing as to any personal bias or prejudice, disqualify him from presiding at the trial." 15 R. C. L. pp. 530, 531. The United States Supreme Court has held that it is no valid objection to a judge trying a cause that before his appointment he was attorney in other matter for some of the parties. But that "in such a state of facts, the judge must be permitted to decide for himself whether it was improper for him to sit in trial of the suit." Carr v. Fife, 156 U. S. 494, 39 L. ed. 508, 15 Sup. ct. Rep 427.

The petition filed by the appellant challenging Justice Robinson's right to sit in this case was not verified. There was, and is, no contention that Justice Robinson had even the remotest interest in the lawsuit, or that he was related to or even acquainted with the parties. The mere fact that a judge entertains, or even has expressed, an opinion upon some question of law, does not disqualify him on the ground of bias or prejudice. If it did, then a trial judge ought not to sit on the hearing of a motion for a new trial based upon errors of law committed during the course of the trial, and the members of this court ought not to sit in the consideration of petitions for rehearings or upon rearguments of causes. "There is no rule or principle," said the supreme court of Vermont (Martyn v. Curtis, 68 Ut. 397, 35 Atl. 334) "that disqualifies the judge of a court from sitting in different causes in which the same legal rules and questions of fact, or either of them, are presented for consideration. In many instances, causes involving the same questions are tried by the same judges."

Under the facts presented in this case the remaining members of the court would not be justified in saying that Mr. Justice Robinson should not sit and participate in the hearing and determination of the case. At most a situation is presented in which he must be permitted to determine for himself whether it is proper for him to sit. Carr v. Fife, 156 U. S. 494, 498, 39 L. ed. 508, 510, 15 Sup. Ct: Rep. 427. See also State ex rel.

Langer v. Kositzky, 38 N. D. 616, 621, 622, L.R.A. 1918 D, 237, 166 N. W. 534.

It is suggested in the petition for rehearing that the fact that Mr. Justice Robinson participated after his right to sit had been assailed will render the judgment of this court of questionable validity. For reasons already stated we are entirely satisfied that a situation does not exist in this case which would justify the remaining members of the court in ruling that Mr. Justice Robinson is disqualified. But even if we were of the opinion that he was disqualified, it would not follow that the former decision, participated in by him, is invalid. That decision was agreed to by a majority of this court, exclusive of Mr. Justice Robinson. Hence, under the rule adopted in this state, the judgment would not be invalid, even though Mr. Justice Robinson was in fact disqualified. See State ex rel. Langer v. Kositzky, supra.

The other questions presented in the petition for rehearing are merely a reargument of the contentions made upon the former argument. It is again contended that the complaint does state a cause of action; that the demurrer admits that the decree was obtained by fraud and bribery. These contentions were fully considered and determined in the former decision. Further reflection has not changed the views expressed therein.

A rehearing is denied.

Robinson, Ch. J., and Bronson and Birdzell, J J., concur.

Grace, J. (dissenting in part and expressing no opinion in part). In so far as the opinion denying the petition for rehearing asserts that the complaint did not state a cause of action, I dissent from it. As far as the disqualification of Justice Robinson is concerned, it is only necessary to say that it has been the rule of this court that each justice of the supreme court should decide for himself whether or not he is disqualified in a given case. Justice Robinson determined for himself that he was not disqualified.

By reason of this rule, I express no opinion on the disqualification claimed to exist against Justice Robinson.