[File No. 6800]

J. S. LAMB, in His Official Capacity as State Highway Commissioner of the State of North Dakota, Respondent, v. NORTHERN IMPROVEMENT COMPANY, a Foreign Corporation, Appellant.

(3 NW(2d) 77)

Opinion filed January 27, 1942

*Francis Murphy,* for appellant.
*W. T. DePuy,* for respondent.

BURR, Ch. J. This is an appeal from a judgment of the district court vacating a judgment obtained in arbitration proceedings, which were commenced under the procedure set forth in chapter 160 of the Session Laws of 1927, and enjoining the enforcement of the same. A demand is made for a trial de novo.

The complaint alleges, among other things, that an award by arbitrators, in the sum of $27,845.92, had been made in favor of the defendant and against the State Highway Department, and that judgment had been entered thereon, but that said judgment had been obtained by misrepresentation as to the legality of the proceedings and the award had been made as the result of fraud, collusion, and deception.

It is not necessary to set forth the allegations in the complaint or the answer, as the case was submitted on a stipulation of facts, to which reference will be made hereafter.

The appellant sets forth two main propositions: that the district court was without jurisdiction to entertain this present action as an independent action to vacate the judgment; and that there is no evidence to sustain a finding that the judgment in the arbitration proceedings was obtained by fraud or collusion.

All of the evidence in the case before us is included in the stipulation of facts. The trial court found that the then

"State Highway Commissioner had no legal authority to submit said claim to arbitration and acted beyond his authority in doing so;

"That the facts disclosed by the evidence in this action leave a strong inference of legal fraud upon the State and the Court."

The stipulated facts show that during 1936, the State Highway Department contemplated the initiation and completion of highway work denominated Project WPGM 81 C; that prior to the execution of any contract therefor, and on or about August 13, 1936, the then State Highway Commissioner was made defendant in an action commenced in the district court of Ward county, wherein George B. Cummings et al. were plaintiffs, and the said State Highway Commissioner et al. were defendants; and therein, on August 13, 1936, the State Highway Commissioner was restrained by the district court "from proceeding with the awarding of any contract or doing any work in connection with the project aforementioned." .

On the hearing, the trial court sustained a demurrer to the plaintiff's complaint and dissolved the restraining order. The plaintiffs in that action immediately appealed to the supreme court. The basis of that action was that the property and property rights of abutting owners were being taken and damaged without compensation being first made to or paid into court for them.

Under the facts stated in that case, this court, on appeal, in an opinion rendered February 2, 1937, held that the plaintiffs in that action were entitled to an injunction against the State Highway Commissioner and the other defendants, restraining them from erecting the overpass until compensation for damages had been paid as required by the constitutional provisions of this state. See Cummings v. Minot, 67 ND 214, 271 NW 421.

Upon the remittitur, judgment was entered for such injunction, restraining the beginning of the work described in this contract until full compensation was paid to the plaintiffs in said action; and said final judgment was thereafter satisfied and dismissed by the plaintiffs therein on May 17, 1937.

The stipulation of facts shows further, that: on November 30, 1936, the defendant had entered into a contract with the Department of State Highways "for the construction of part of what is known as Project WPGM 81 C," and according to a provision in the contract, appellant was to "begin construction work when so ordered by the Department of State Highways;" that on December 16 the Department of State Highways ordered the appellant "to begin work on Project WPGM

81 C as soon as you are able to secure the proper men and equipment necessary for the work."

The stipulation of facts shows further that the work was completed on May 28, 1938; and Exhibit "P-12" is a notification to the "Senior Highway Engineer, Bureau of Public Works, Bismarck, North Dakota," as follows: "You are hereby notified that the above noted project was completed May 28, 1938. A final inspection has been made and the work has been accepted by the State."

This exhibit is dated June 1, 1938, and is made a part of the stipulation of facts, although the stipulation of facts states that the work was accepted May 28, 1938. However, for the purpose of this case, we assume the acceptance was not until June 1, 1938.

It is expressly stipulated that all of these arbitration proceedings were had under the provisions of chapter 160 of the Session Laws of 1927. There is no other statute involved, so far as the determinative issues are concerned.

Section 1 of this chapter provides: "All controversies arising out of any contract for the construction or repair of highways entered into by the State Highway Commission of the State of North Dakota shall be submitted to arbitration as hereinafter provided, . . ."

Section 2 provides: "The party desiring arbitration shall make a written demand therefor and shall in such demand name the arbitrator by him selected. He shall also in such demand set forth all the controversies and claims which he desires to submit to arbitration and a concise statement of his claims with reference to such controversies. Such demand shall be served upon the opposite party, who shall, within ten days, name in writing the arbitrator on his part. . . ."

Section 3 provides: "When such Board of Arbitration shall have been appointed, a submission in writing shall be executed as provided by Section 8328 Compiled Laws of 1913. . . ."

Section 5 provides: *"No right shall exist to demand arbitration* against the State Highway Commission *until the following conditions shall have been complied with; . . ."* and then proceeds to specify the conditions. It provides that the contractor give notice to the commission that the contract has been performed, or will be performed on a day stated, and that at that time the commission shall cause the work

to be inspected, etc. Further: "When the contractor claims in good faith, supported by affidavit furnished to the Commission, that he has completed such additional work according to the specifications furnished him and the Commission fails for ten days to accept such work as completed, *he shall have the right to institute proceedings hereunder.*"

It is clear, therefore, that there is no right to commence or institute proceedings for arbitration until this work has been completed and accepted. The stipulation of facts shows that the work was completed on May 28, and accepted not later than June 1, 1938.

Section 6 of the statute provides: *"No arbitration shall be had hereunder* unless commenced within six months after the right thereto has arisen," except in cases occurring before the statute was enacted.

It is true that when the defendant received the notice from the commission to commence work, dated May 11, 1937, it answered—Exhibit "P-6," dated May 24, 1937—stating that it had begun work in compliance with this notice, but "The action of the company in commencing such work and carrying the same on, however, is done subject to the right of the company to recover for any damage which may have been caused by the delay due to litigation over which it had no control. This right of compensation is hereby strictly reserved."

Exhibit "P-7" is dated September 9, 1937, is addressed to the State Highway Commissioner, and states, among other things, "The undersigned, Northern Improvement Co., of Fargo, North Dakota, hereby demands and desires the arbitration of the controversies arising out of the contract between the Northern Improvement Co. and the State Highway Commission of the State of North Dakota, for the construction of a highway within said state known as Project No. WPGM-81-C, at Minot, North Dakota; and then sets forth the items of the claim, amounting to $33,534.41 "Plus 10% retained." This is the only demand for arbitration that appears in the record, and was made more than eight months before the work was completed and accepted. There is no demand of any kind for the submission to arbitration in the record other than this Exhibit "P-7."

The next fact bearing on this question, appearing in the stipulation of facts and the exhibits, is the agreement between the parties to submit the whole matter to arbitration—Exhibit "P-16." This exhibit re-

cites that "This Agreement made and entered into this 13th day of December, 1938, at Bismarck, North Dakota" and it specifies, "Whereas disputes and differences have arisen and are pending between the State of North Dakota, doing business and acting as the State Highway Department, first party, and the Northern Improvement Company, a North Dakota Corporation, of Fargo, North Dakota, second party;

"It is therefore agreed that the said disputes and differences . . . shall be, and the same are hereby referred to the arbitration and determination of" arbitrators named therein.

An examination of the sections of the statute quoted show that the defendant had no right whatever to demand or submit this matter to arbitration, or any matter arising out of this contract, until June 1, 1938, at the very longest period. Therefore, under the provisions of section 6, such arbitration had to be commenced "within six months after" that right thereto had arisen. The right arose on June 1, 1938, and the defendant had the right to demand arbitration within six months thereafter. The record shows no demand for arbitration, nor any proposition to submit to arbitration, within that six months' period. The first that the stipulation of facts shows is the agreement between the parties, dated December 13, 1938.

Clearly, the State Highway Commission had no authority to extend that period, nor did the defendant have any right to demand proceedings under the provisions of chapter 160 after the expiration of the six months' period. It must be kept in mind that the proceedings as stipulated by the parties are held solely under the provisions of chapter 160. Whatever may be the construction of the term found in section 1, "All controversies arising out of any contract," and conceding that these claims for damages were such as could have been submitted to arbitration under this statute; nevertheless, the right to arbitration did not exist until June 1, 1938, and the arbitration proceedings had to be commenced within six months thereafter.

In 3 Am Jur 837, Arbitration and Award, § 7, the rule is laid down: "Generally speaking, a submission to arbitration under a statute must conform to the statute in every essential particular." And again, the same authority says, "The weight of authority, however, especially with respect to statutes setting up novel remedial procedure, supports

the view that to obtain the benefits of the statutes, their provisions must be followed in all their exactitude, and the slightest deviation therefrom renders the procedure nugatory."

The same authority, 3 Am Jur 867, Arbitration and Award, § 39, says, "If the arbitration is to be under statute, obviously the submission must conform to the statutory requirements," and, further, "These requirements are ordinarily held to be jurisdictional."

In Cochrane v. Forbes, 257 Mass 135, 153 NE 566, it is held, "Agreement for submission to arbitration, which departs in matter of substance from statutory requirements, is void."

These provisions of the statute not having been complied with, resort could not be had to chapter 160, and, therefore, the district court, in entering judgment upon the decision of the arbitrators, under the provisions of § 3, which provides that the submission had to include an agreement for the entry of judgment upon the award, and further, notwithstanding the fact that the agreement to submit to arbitration, dated December 13, 1938, Exhibit "P-16," provided that the award of the arbitrators "shall be filed in the district court of Ward county, North Dakota, and the said court may enter judgment upon said award in the same manner and with the same force and effect as in a civil action," the arbitration proceedings have no force and effect under the provisions of chapter 160, and the court would have no jurisdiction to enter judgment thereunder.

But appellant urges that the legislature

"Appropriated funds to pay this judgment.

"By chapter 72 of the 1941 Laws the legislature recognized the justice of this claim and made an appropriation to pay the judgment in question, subject to final disposition by the court. This appropriation was made with full knowledge of the controversy and the litigation involved herein, and evidences the legislative acknowledgment that the same should be paid."

Said chapter 72 does not bear out the appellant's contention. The legislature appropriated $27,845.92 to the State Highway Commissioner "to be available for the payment of any final Judgment that shall be obtained by the Northern Improvement Company. . . . Provided however, that said sum, or any part thereof, shall not be paid

to said Northern Improvement Company, nor shall the same be available to the State Highway Commissioner, until final determination be had and final Judgment obtained in favor of said Northern Improvement Company in any and all actions, controversies or appeals now pending in the Courts of this State or to be hereinafter instituted between said Northern Improvement Company, a foreign corporation, and the said State Highway Department and/or the State Highway Commissioner, arising out of said Minot overpass job."

It is clear, therefore, the state of North Dakota, through the legislature, has not recognized the validity of this claim, or determined that it should be paid. The legislature has not undertaken to settle any dispute between the state and the appellant. It has made provision for the payment, if such claim be ordered by the courts.

Appellant urges this action must be dismissed because the plaintiff has mistaken his remedy. It is the contention of the appellant that the district court had no jurisdiction to entertain this action because

"The District Court was without jurisdiction to entertain an independent action to vacate its judgment.

"The judgment which is attacked in this action was entered in the District Court of Ward County pursuant to the provision of chapter 160 of the Laws of 1927 and in accordance with the procedure provided by chapter 40 of the Code of Civil Procedure, Compiled Laws. for North Dakota for 1913.

"Such judgment has the same force and effect as a judgment in an action, § 8339, Comp. Laws 1913.

"The judgment having been regularly entered, it was not subject to attack in a separate, independent action to vacate for fraud, misrepresentation, or collusion. Lamb v. King, 70 ND 496, 296 NW 185; McGinnity v. Dowd, 47 ND 554, 182 NW 938; Olson v. Donnelly, 70 ND 370, 294 NW 666; Tuttle v. Tuttle, 48 ND 10, 181 NW 898."

Owing to this argument in the appellant's brief, it is necessary to state that nowhere in the record in the trial court does the defendant raise the question as to the propriety of the remedy sought by plaintiff or the method employed to secure it. The matter was presented to the district court upon the issues as set forth in the pleadings. It was not until after the appeal was taken and in this court, that the defendant

raised the question of the propriety of the remedy and alleged that the district court had no jurisdiction to hear and determine the issue.

Appellant cannot for the first time in this court raise the question of the proper remedy to attack the judgment sought to be enjoined. No demurrer was interposed to the complaint; no motion to dismiss; no attack whatever made upon the method employed, though the complaint specifically sets forth that a judgment had been entered on the award, and that it was this judgment which plaintiff sought to set aside in the independent action.

In any action brought to set aside a judgment obtained in the district court, that district court has jurisdiction to hear and determine the issue. The decisions cited by appellant are not based upon the lack of jurisdiction, but rather upon the method employed to attack the judgment.

Considering the cases relied upon by appellant, we find, in McGinnity v. Dowd, in Tuttle v. Tuttle, and in Olson v. Donnelly, the complaint showed, as in this case, that a judgment had been entered already. The defendant demurred to the complaint. We held that the demurrer raised the question of a collateral attack. In other words, the defendant in that case raised the issue immediately in the trial court. In Lamb v. King, the question was raised by answer.

In the case at bar, the question is not raised in the trial court by any method.

As said in Minneapolis, St. P. & S. Ste. M. R. Co. v. Stutsman, 31 ND 597, 154 NW 654, "Nowhere in the record, prior to appeal, was jurisdiction of the district court challenged. The parties could confer jurisdiction of the subject-matter upon that court, and have done so, without objection. And no question of jurisdiction arises upon the record, the parties being held to the theory of the trial as had below."

In the body of the opinion we say (31 ND 599 et seq., 154 NW 655): "This proceeding stands exactly as though these parties had formulated their issue for decision and thereupon submitted the same to the district court for trial and decision upon the merits, and with that court having jurisdiction at law of the subject-matter so submitted for arbitrament. . . . That being so, as a matter of law, we are not concerned in the steps leading up to the submission of that question

to that court on the merits, further than to know that the same was done and without any objection thereto, or any question made as to the jurisdiction of that court over the subject-matter."

And again (31 ND 599, 154 NW 655): "From the entire record before the district court it appears that no question of jurisdiction of that court of either subject-matter or parties was ever raised, either by demurrer, motion, or otherwise."

Appellant is not in position to attack the remedy invoked.

Even if we were to hold that this was a collateral attack on the judgment, and not a direct attack; nevertheless, the defendant has waived any such right to attack the method employed. In the lower court it litigated the issue directly; it submitted the issue to the court without questioning the propriety of the remedy. It cannot now be permitted on appeal to change the theory of the case, for we try the case upon the issues presented by the pleadings and the evidence. See Lindberg v. Burton, 41 ND 587, 599, 171 NW 616, 620; Re Campbell, 56 ND 60, 215 NW 913; Roach v. McKee, 66 ND 304, 265 NW 264; Nord v. Nord, 68 ND 560, 573, 282 NW 507, 514.

Whether the appellant has a cause of action against the State or any department of the State to recover for any alleged damages is not determined here. That matter is not involved. We hold merely that whatever right there was to demand arbitration was lost by failure to demand in time, and, therefore, the judgment entered thereon is void.

The judgment appealed from is affirmed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.